**IN THE UNTIED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ED'S BEANS, INC., D/B/A | : | Bankruptcy Case No. 20-22974-CMB |
| CRAZY MOCHA COFFEE AND | : | |
| KIVA HAN COFFEE | : | |
| | : | |
| Debtor. | : | Chapter 11 |
| | : | |
| _____ | : | |
| | : | Docket No. ___ |
| ED'S BEANS, INC., D/B/A | : | |
| CRAZY MOCHA COFFEE AND | : | |
| KIVA HAN COFFEE | : | |
| | : | Hearing Date: |
| Movant, | : | |
| | : | Response Date: |
| v. | : | |
| | : | |
| FIRST COMMONWEALTH BANK, | : | |
| AMERICAN EXPRESS BANK, | : | |
| CHTD COMPANY, AND | : | |
| U.S. SMALL BUSINESS | : | |
| ADMINISTRATION | : | |
| | : | |
| Respondents. | : | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 363, F.R.B.P. NOS. 2002, 4001 AND 9014 AND W.PA.LBR 4001-2**

AND NOW, comes the Debtor, Ed's Beans, Inc., d/b/a Crazy Mocha Coffee and Kiva Hahn Coffee (the "**Debtor**"), by and through its undersigned proposed counsel, Leech Tishman Fuscaldo & Lampl, LLC, and files this Emergency Motion for Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 105 and 363, F.R.B.P. Nos. 2002, 4001 and 9014 and W.PA.LBR 4001-2 (the "**Cash Collateral Motion**"), setting forth as follows:

## JURISDICTION AND VENUE

1. Jurisdiction over this Cash Collateral Motion is proper under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). 11 U.S.C. §§ 105 and 363 and F.R.B.P. Nos. 2002, 4001 and 9014 and W.PA.LBR 4001-2 provide the statutory and procedural basis for the relief requested in this Cash Collateral Motion.

## BACKGROUND

2. On October 19, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for protection under Title 11, Chapter 11 of the United States bankruptcy Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**").

3. The Debtor is a Pennsylvania Corporation, organized and existing under the laws of Pennsylvania with an address of 711 Thomson Park Drive, Cranberry Township, PA 16066.

4. The Debtor is the owner and operator of Crazy Mocha Coffee with 23 locations throughout Allegheny and Beaver Counties Pennsylvania, with a concentration in the downtown Pittsburgh and surrounding areas.

5. Crazy Mocha Coffee primarily offers customers various coffees, specialty drinks and similar beverages and a menu of various pastries, snacks and related food items.

6. The Debtor also operates Kiva Han Coffee, a roaster and wholesaler of coffee beans and various other products, including tea, specialty drinks, café supplies and equipment.

7. The Debtor is party to a number of leases for real estate out of which it operates its Crazy Mocha Coffee and Kiva Han businesses (the "**Leased Premises**").

8. The Debtor is the owner of certain fixtures, improvements and equipment and other assets located on the Leased Premises.

9. Due to the unprecedented events caused by the COVID-19 Pandemic, the Debtor was initially forced to close its operations for a period of months.

10. Since the slow reopening of businesses in Pennsylvania, the Debtor has been able to maintain some of the Kiva Han operations and open 7 of its Crazy Mocha Coffee locations, while the rest remain temporarily closed.

11. Despite the slow reopening of businesses, the financial strain caused by the shut-down of operations, including significant loss of revenue, and the slow recovery ahead, lead the Debtor to seek protection and reorganization under the United State Bankruptcy Code.

12. The Debtor continues to operate its businesses and manage its property as a debtor-in-possession under 11 U.S.C. §1107(a) and 1108.

13. At this time, no official committee of unsecured creditors' (the "Committee") has been appointed at this time.

14. Further, no trustee or examiner has been appointed or requested.

**SECURED DEBT, INTEREST IN CASH COLLATERAL**

15. The Debtor is a party to, among other documents, that certain: (i) U.S. Small Business Administration ("**SBA**") Note (the "**Term Note**"): (ii) Business Loan Agreement (the "**Term Loan Agreement**"); (iii) Commercial Security Agreement Credit Agreement (the "**Term Loan Security Agreement**"), all dated March 14, 2018, by and among, the Debtor, as borrower, and First Commonwealth Bank ("**First Commonwealth**") as Lender (collectively the "**Term Loan**").

16. The principal amount borrowed under the Term Loan was $2,790,000, with a current balance owed of $2,358,278.75.

17. The Term Loan is a ten (10) year loan with and interest rate of Prime, plus 2.5%, a maturity date of March 1, 2028, and monthly principal and interest payments of $32.327.01.

18. Pursuant to the Term Loan Security Agreement, monies loaned under the Term Loan were secured by substantially all of the Debtor's personal assets, including accounts and deposit accounts.

19. The Debtor is a party to, among other documents, that certain: (i) SBA Note (the "**Line of Credit Note**"): (ii) Business Loan Agreement (the " **Line of Credit Loan Agreement**"); (iii) Commercial Security Agreement Credit Agreement (the "**Line of Credit Loan Security Agreement**"), all dated March 14, 2018, by and among, the Debtor, as borrower, and First Commonwealth as Lender (collectively the "**Line of Credit**").

20. The principal amount borrowed under the Line of Credit was $250,000, with a current balance owed of $249,687.50.

21. The Line of Credit is a seven (7) year loan with and interest rate of Prime, plus 1.5%, a maturity date of March 14, 2025, and monthly interest only payments for the first 24 months and monthly principal and interest payments of $4,834.17, thereafter.

22. Pursuant to the Line of Credit Security Agreement, monies loaned under the Line of Credit were secured by substantially all of the Debtor's personal assets, including accounts and deposit accounts.

` 23. First Commonwealth filed a UCC-1 Financing Statement with the Pennsylvania Department of State on March 19, 2018, Financial Statement No. 2018031901240, listing Debtor as debtor and First Commonwealth as secured party.

24. The Debtor is party to that certain Business Loan and Security Agreement dated July 25, 2019, by and between the Debtor, as borrower, and American Express National Bank ("**American Express**"), as lender (the "**American Express Loan**").

25. The principal amount borrowed under the American Express Loan was $157,000, with a current balance owed of $53,092.98.

26. The American Express Loan is a one (1) year loan with a maturity date of July 25, 2020, Loan Fee of 8% of the loan amount with daily principal and interest payments of $678.24.

27. Pursuant to the American Express Loan, monies loaned were to be secured by substantially all of the Debtor's personal assets, including accounts and deposit accounts.

28. American Express filed a UCC-1 Financing Statement with the Pennsylvania Department of State on February 22, 2019, Financial Statement No. 2019022200609, listing Debtor as debtor and American Express as secured party.

29. The Debtor is a recipient of a $150,000 Economic Injury Disaster Loan from the SBA (the "**EIDL Loan**").

30. The EIDL Loan has a thirty (30) year term, a fixed interest rate of 3.75%, with a one (1) year deferment on payments (interest still accrues).

31. The EIDL Loan is to be secured by the personal assets of the Debtor, including accounts and deposit accounts.

32. The SBA filed a UCC-1 Financing Statement with the Pennsylvania Department of State on May 28, 2020, Financial Statement No. 2020052801062, listing Debtor as debtor and the SBA as secured party.

33. CHTD Company (which appears to be an alias for Corporation Services Company), with an address of P.O. Box 25 27, Springfield, IL 62708, filed a UCC-1 Financing Statement with

the Pennsylvania Department of State on June 18, 2019, listing the Debtor as debtor and CHTD Company as the secured party.

34. The Debtor's books and records do not reflect that any monies are owed to CHTD Company.

## RELIEF REQUESTED, USE OF CASH COLLATER AND ADEQUATE PROTECTION

35. The Debtor's use of its cash collateral generated from, among other things, sales and other income produced from the operation of the Crazy Mocha Coffee and Kiva Han businesses, is critical to the continued operation of the Debtor and the ultimate successful reorganization of its business.

36. Cash flow from operations are sufficient to cover all of Debtor's operating expenses in the amounts set forth in the attached interim budget (the "**Interim Budget**"). The Interim Budget is attached to this Cash Collateral Motion and marked as Exhibit A.

37. The Debtor proposes to use cash collateral on an interim basis and until such time as a final order approving and authorizing Debtor's use of cash collateral is entered (the "**Interim Cash Collateral Period**"). The Debtor proposes to use cash collateral during the Interim Cash Collateral Period in accordance with the attached Interim Budget.

38. Section 363(c)(2) of the Bankruptcy code provides:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. §363(c)(2).

39. The Debtor submits that this Court should approve use of cash collateral on an interim basis, such that, there is a reasonable likelihood that the Debtor will prevail in a final hearing under Section 363(e), which provides in relevant part:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. §363(e).

40. The Bankruptcy Code does not expressly define adequate protection, but Section 361, provides guidance and examples, of what would constitute adequate protection. Section 361 provides in relevant part:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. §361.

41. The Debtor submits that First Commonwealth's, American Express' and the SBA's interests in cash collateral will not decrease significantly in value as a result of the Debtor's use of cash collateral during the Interim Cash Collateral Period, or thereafter. Through operation of its

business, the Debtor will be replacing used cash collateral with new revenue, accounts receivable and cash.

42. Subject to final hearing and final order and Debtor's rights, including but not limited to, its rights under Section 506 of the Bankruptcy Code, its rights to object to and/or otherwise contest the validity, priority, extent and/or amount of any lien and/or claim, including the liens and claims of First Commonwealth, American Express, CHTD Company and/or the SBA, and its rights under any other relevant and applicable sections of the Bankruptcy Code, in accordance with Section 361 of the Bankruptcy Code, the Debtor proposes to provide to First Commonwealth, American Express and the SBA the following adequate protection[1]:

(a) To First Commonwealth, American Express, CHTD Company and the SBA: An additional or replacement lien, in an amount *equal to the decrease in the value* of First Commonwealth's, American Express' and the SBA's interest in cash collateral as a result of the Debtor's use of the same during the Interim Cash Collateral Period, in post-petition property of the Debtor of the same nature, to the same extent and of the same priority that First Commonwealth, American Express and the SBA had in the pre-petition property of the Debtor (the "**Replacement Liens**"); and

(b) To First Commonwealth, American Express, CHTD Company and the SBA: To the extent the First Commonwealth Adequate Protection Payment and/or the Replacement Liens fails to protect First Commonwealth, American Express, CHTD Company and the SBA from any decrease in the value of their interests in cash collateral, then First

---

[1] The Debtor submits, subject to its reservation of rights as set-forth in paragraph 42, since First Commonwealth has a first priority lien in the Debtor's cash collateral, which cash collateral value as of the Petition Date, as evidence by the Interim Budget, does not exceed amounts owed to First Commonwealth, and because American Express, CHTD Company and the SBA have a second, third and fourth priority lien, respectively, the value of American Express', CHTD Company's and the SBA's interest in cash collateral on the filing date is zero.

8

Commonwealth, American Express, CHTD Company and the SBA shall be entitled to an administrative claim with priority over any other administrative claim allowable under Section 507(a)(2) and 503(b) of the Bankruptcy Code except the allowable administrative claims of estate/Debtor professionals awarded in accordance with Section 330 of the Bankruptcy Code (the "**Super Priority Administrative Claim**").

43. Pursuant to W.PA.L.R No. 4001-2, and with respect to the instant Cash Collateral Motion, the Debtor submits the following:

| | |
|---|---|
| Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law); | None |
| Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least (a) one hundred twenty (120) days from the date of the order, or (b) ninety (90) days from the date a committee is formed and retains counsel, to investigate such matters; | None |
| Provisions that seek to waive or release, without notice and/or hearing, whatever rights the estate may have under applicable law, including without limitation, Chapter 5 of the United States Bankruptcy Code; | None |
| Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action | None |

| | |
|---|---|
| arising under 11 U.S.C. §§ 544, 545, 547, 548, and 549; | |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in U.S.C. § 552(b); | None |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out; and | None |
| Provisions that prime any secured lien without the consent of that lienor. | None |

44.     The Replacement Liens and Super Priority Administrative Claim, provide First Commonwealth, American Express, CHTD Company and the SBA adequate protection of their interests in cash collateral during the Interim Cash Collateral Period.

45.     Based upon the above, the Debtor submits that it is appropriate for this Court to approve and authorize Debtor's use of cash collateral during the Interim Cash Collateral Period in accordance with the attached Interim Budget, allowing the Debtor to continue operations post-petition, preserve the value of its assets and ultimately allow the Debtor to reorganize.

46.     It is the best interests of the Debtor, its creditors and the estate as a whole for this Court to approve and authorize Debtor's use of cash collateral during the Interim Cash Collateral Period under Section 363(c)(2).

## CAUSE FOR EXPEDITED HEARING

47.     The need for an expedited hearing herein has not been caused by any lack of due diligence on the part of the Debtor or the Debtor's counsel.

48. The Debtor needs expedited interim relief from this Court on use of cash collateral in order to service its customers, make payroll, and to otherwise sustain its business operations.

WHEREFORE, Ed's Beans, Inc., d/b/a Crazy Mocha Coffee and Kiva Han Coffee respectfully requests that this Court: (i) grant the Cash Collateral Motion; (ii) approve and authorize Debtor's use of cash collateral during the Interim Cash Collateral Period in accordance with the attached Interim Budget; (iii) schedule a hearing on entry of a final order approving use of cash collateral; and (iv) grant such other relief as may be just and proper.

Dated: October 20, 2020

Respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

By: /s/ *John M. Steiner*
John M. Steiner, Esq.
PA ID No. 79390
jsteiner@leechtishman.com
Crystal Thornton-Illar, Esq.
PA ID No. 93003
cthornton-illar@leechtishman.com
Matthew J. Burne, Esq.
PA ID 314888
mburne@leechtishman.com

525 William Penn Place
28th Floor
Pittsburgh, PA 15219
(412) 261-1600 (Phone)
(412- 227-5551 (Fax)