**IN THE UNTIED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy Case No.: 20-22974-CMB |
| | : | |
| ED'S BEANS, INC. D/B/A | : | |
| CRAZY MOCHA COFFEE AND | : | |
| KIVA HAN COFFEE | : | |
| | : | |
| Debtor. | : | Chapter 11 |
| | : | |
| ED'S BEANS, INC. D/B/A | : | Related Doc. No. |
| CRAZY MOCHA COFFEE AND | : | |
| KIVA HAN COFFEE | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| PSE&G, WEST PENN POWER, | : | |
| SEWICKLEY WATER AUTHORITY, | : | |
| OLYMPIC II MALL SERVICES, AT&T | : | |
| MOBILITY, COLUMBIA GAS, | : | |
| COMCAST BUSINESS, | : | |
| CONSOLIDATED | : | |
| COMMUNICATIONS, DUQUESNE | : | |
| LIGHT COMPANY, JOSEPH J. | : | |
| BRUNNER, INC., PENN POWER, | : | |
| PEOPLE'S GAS, VERIZON, VOGEL | : | |
| DISPOSAL SERVICE | : | |
| Respondents. | : | |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR
DISCONTINUING UTILITY SERVICES, (II) DETERMINING ADEQUATE
ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, AND
<u>(III) GRANTING RELATED RELIEF</u>**

AND NOW, comes the Debtor, Ed's Beans, Inc., d/b/a Crazy Mocha and Kiva Hahn Coffee (the "**Debtor**"), by and through its undersigned proposed counsel, Leech Tishman Fuscaldo & Lampl, LLC, and files this Emergency Motion for Entry of Interim and Final Orders: (i) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (ii)

1

Determining Adequate Assurance of Payment for Future Utility Services, and (iii) Granting Related Relief (the "**Utility Motion**") setting forth as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 366 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended; hereinafter the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania (the "**Local Rules**").

## FACTUAL BACKGROUND

3. On October 19, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania (the "**Bankruptcy Court**") at the above-captioned case number (the "**Bankruptcy Case**").

4. The Debtor is a Pennsylvania Corporation, organized and existing under the laws of Pennsylvania with an address of 711 Thomson Park Drive, Cranberry Township, PA 16066.

5. In 1993, the Debtor began doing business as Kiva Han Coffee, a coffee wholesale, distributor, and roaster. The Debtor supplied coffee to many businesses, including Crazy Mocha, a local Pittsburgh chain of coffee shops. In 2018, the Debtor purchased all the assets of Crazy Mocha and began operating the Crazy Mocha coffee chain.

2

6. Currently, the Debtor is the owner and operator of Crazy Mocha with 23 locations throughout Allegheny and Beaver Counties in Pennsylvania, with a concentration in the downtown Pittsburgh and the surrounding areas.

7. Crazy Mocha offers customers a variety of coffee drinks and other specialty drinks, along with pastries, snacks, and related food items.

8. The Debtor also continues to operate Kiva Han Coffee, a roaster and wholesaler of coffee beans and various other products, including tea, specialty drinks, café supplies, and equipment.

9. The Debtor is party to a number of leases for real estate out of which it operates its Crazy Mocha and Kiva Han Coffee businesses (the "**Leased Premises**").

10. The Debtor is the owner of certain fixtures, improvements, equipment, and other assets located on the Leased Premises.

11. Due to the unprecedented events caused by the COVID-19 Pandemic, the Debtor was forced to close all of its operations for a period of several months.

12. Since the slow reopening of businesses in Pennsylvania, the Debtor has been able to maintain some of the Kiva Han Coffee operations and open 7 of its Crazy Mocha locations, while the rest continue to remain temporarily closed.

13. The financial strain caused by the shut-down of operations and the slow reopening process has forced the Debtor to seek protection and reorganization under the Bankruptcy Code.

14. The Debtor continues to operate its businesses and manage its property as a debtor-in-possession under Section 1184 of the Bankruptcy Code.

*The Utility Services*

15. In connection with the operation of its business, the Debtor obtains water, sewer service, waste disposal, natural gas, electricity, telecommunications, internet access and service,

and other similar services (collectively, the "**Utility Services**") from a number of utility providers (the "**Utility Provider(s)**"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtor as of the Petition Date is attached hereto as **Schedule "1"**.[1] The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtor, regardless of whether they are included on Schedule "1".

16. Preserving Utility Services on an uninterrupted basis is essential to the Debtor's business operations. The Debtor's business includes multiple locations in the greater Pittsburgh area. These locations require electricity, telecommunications, internet, water, waste management, and other utility services to operate.

17. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtor's business operations would be disrupted, which could jeopardize the Debtor's ability to effectively reorganize. Accordingly, it is essential that the Utility Services continue uninterrupted during this Bankruptcy Case.

18. As of the Petition Date, the Debtor was current on most utility payments due to the Utility Providers.

*The Proposed Adequate Assurance*

19. The Debtor intends to pay post-petition obligations to the Utility Providers in a timely manner consistent with ordinary course practices.

20. The Debtor's prepetition practice of timely paying for most Utility Services in conjunction with its ability to pay for future Utility Services constitutes sufficient adequate

---

[1] Although Schedule "1" is meant to be comprehensive list, the Debtor may have inadvertently omitted one or more Utility Providers. By this Motion, the Debtor requests relief applicable to all Utility Providers, regardless whether such Utility Provider is specifically identified on Schedule "1".

assurance to the Utility Providers in full satisfaction of Section 366 of the Bankruptcy Code. Nevertheless, if any Utility Provider makes a further request for adequate assurance of future payment (each, an "**Adequate Assurance Request**"), the Debtor requests they be required to do so pursuant to the following procedures (the "**Adequate Assurance Procedures**"):

a. Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") on: (i) the Debtor, (ii) proposed counsel to the Debtor, (iii) United States Trustee, (iv) counsel to First Commonwealth Bank and American Express Bank, (v) the Subchapter V Trustee, (vi) parties requesting service in this matter pursuant to Bankruptcy Rule 2002, and (vi) as required by any order directing service in this matter (the "**Notice Parties**").

b. Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtor; (iv) provide evidence that the Debtor has a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

c. An Additional Assurance Request may be made at any time. If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance Request.

d. Upon the Debtor's receipt of an Adequate Assurance Request, the Debtor shall have 21 days (the "**Resolution Period**") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request. Without further order of the Bankruptcy Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider if the Debtor determines that the Additional Assurance Request is reasonable.

e. If the Debtor determines, in its discretion, that the Additional Assurance Request is not reasonable and the Debtor is unable to reach an alternate resolution with the Utility Provider, the Debtor, may request a hearing (a "**Determination Hearing**") before the Bankruptcy Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

  f. Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtor on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

21. The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while allowing the Debtor to continue to operate its business uninterrupted.

22. Specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Adequate Assurance Request upon certain parties. The Debtor, in its discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Bankruptcy Court. If the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtor may seek court resolution of the Adequate Assurance Request.

23. Absent compliance with the Adequate Assurance Procedures, the Debtor requests that the Utility Providers, including subsequently added Utility Providers, if any, be prohibited from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance, pending entry of a final order approving the relief requested herein.

**RELIEF REQUESTED**

24. By this Motion, pursuant to 11 U.S.C. §§ 105(a) and 366, Fed. R .Bankr. P. 6003, and W.D. Pa. LBR 9013-1, the Debtor requests entry of interim and final orders: (i) prohibiting utility providers from altering, refusing, or discontinuing services; (ii) determining adequate assurance of payment for future utility services; and (iii) granting related relief.

**BASIS FOR RELIEF**

25. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility provider within thirty days of the Petition Date, or the utility provider may alter, refuse or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009) ("Generally, adequate assurance is considered to be something less than an absolute guarantee.").

26. When considering whether a given assurance of payment is "adequate," the Bankruptcy Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002). Courts have recognized that in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtor's specific circumstances already afford adequate assurance of payment.

27. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtor's ongoing ability to meet obligations as they come due in the ordinary course, consistent with its history of dealings with the Utility Providers, provides assurance of the Debtor's payment of its future obligations.

28. Termination of the Utility Services could result in the Debtor's inability to operate its business to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321-2 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

29. Courts are also permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under Section 366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtor "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in its efforts to reorganize." *Id.*

30. Here, notwithstanding a determination that the Debtor's Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are being wholly preserved under the Adequate Assurance Procedures. *See Id.* at *5-6.

31. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See Id.* at *5. The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility

Provider could make a last-minute demand for adequate assurance that would force the Debtor to pay under the threat of losing critical Utility Services.

33. Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Bankruptcy Court should grant the relief requested herein. Similar procedures have been approved by various courts in this circuit. *See, e.g.*, *In re rue21, inc.*, No. 17-22045-GLT (Bankr. W.D. Pa. June 12, 2017); *In re PTC Seamless Tube Corp. f/k/a PTC Alliance Pipe Acquisition LLC*, No. 16-21445-TPA (Bankr. W.D. Pa. May 29, 2015); *In re Sports Authority Holdings, Inc.*, No. 16-10527-MFW (Bankr. D. Del. April 1, 2016).

**Debtor Has Satisfied Bankruptcy Rule 6003(b)**

33. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition.

34. For the reasons discussed above, preventing the interruption of the Utility Services and granting the other relief requested herein is essential to the Debtor's ability to smoothly transition its operations into this Bankruptcy Case. Failure to receive such authorization and other relief during the first 21 days of this Bankruptcy Case would severely disrupt the Debtor's ability to administer its estate at this juncture.

35. For the reasons discussed herein, the relief requested is necessary for the Debtor to preserve and maximize the value of Debtor's estate for the benefit of all stakeholders. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

**Request for Bankruptcy Rule 6004(a) and (h) Waivers**

36. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

### REQUEST FOR EXPEDITED RELIEF

37. The need for an expedited hearing herein has not been caused by any lack of due diligence on the part of the Debtor or the Debtor's counsel.

38. The Debtor will incur harm if a hearing and interim relief is not granted because interruption of the Utility Service could adversely impact the Debtor's operations and impair its ability to administer its estate under this Bankruptcy Case.

### RESERVATION OF RIGHTS

39. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program or policy between the Debtor and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or waiver of the Debtor's right to dispute such claim subsequently.

WHEREFORE, the Debtor respectfully requests immediate entry of the Proposed Interim Order and, thereafter, the Proposed Final Order, granting the relief requested herein, and Debtor prays that this Court grant such other relief that is just and proper.

October 20, 2020                              Respectfully Submitted,


                                              LEECH TISHMAN FUSCALDO & LAMPL, LLC

                                              By: */s/ John M. Steiner*
                                              John M. Steiner, Esq.
                                              PA ID No. 79390
                                              jsteiner@leechtishman.com
                                              Crystal Thornton-Illar, Esq.
                                              PA ID No. 93003
                                              cthornton-illar@leechtishman.com
                                              Matthew J. Burne, Esq.
                                              PA ID 314888
                                              mburne@leechtishman.com

                                              525 William Penn Place
                                              28th Floor
                                              Pittsburgh, PA 15219
                                              (412) 261-1600 (Phone)
                                              (412- 227-5551 (Fax)