# IN THE UNTIED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy Case No. 20-22974-CMB |
| | : | |
| ED'S BEANS, INC. D/B/A | : | |
| CRAZY MOCHA AND | : | |
| KIVA HAN COFFEE, | : | |
| | : | |
| Debtor. | : | Chapter 11 |
| | : | |
| ED'S BEANS, INC. D/B/A | : | Docket No. |
| CRAZY MOCHA AND | : | |
| KIVA HAN COFFEE, | : | |
| Movant, | : | Hearing Date: |
| | : | |
| v. | : | |
| | : | Response Date |
| NO RESPONDENTS. | : | |

**EMERGENCY MOTION BY THE DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), 363(b), 507 AND 1114(e) AND FED. R. BANKR. P. 4001, 6003, AND 6004 FOR AUTHORITY TO: (I) PAY PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION AND BENEFITS, (II) MAINTAIN EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, AND (III) AUTHORIZE BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

AND NOW, comes the Debtor, Ed's Beans, Inc., d/b/a Crazy Mocha and Kiva Hahn Coffee (the "**Debtor**"), by and through its undersigned proposed counsel, Leech Tishman Fuscaldo & Lampl, LLC, and files this Emergency Motion (the "**Motion**") pursuant to 11 U.S.C. §§ 105(a), 362(d), 363(b), 507, and 1114(e) and Rules 4001, 6003, and 6004 of the Fed. R. Bankr. P. for Authority to: (i) Pay Prepetition Wages, Salaries, and Other Compensation and Benefits, (ii) Maintain Employee Benefit Programs and Pay Related Administrative Obligations, and (iii) Authorize Banks to Honor and Process Related Checks and Transfers setting forth as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 362(d), 363(b), and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended; hereinafter the "**Bankruptcy Code**"), Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## FACTUAL BACKGROUND

3. On October 19, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for protection under Chapter 11, Subchapter V, of the Bankruptcy Code.

4. The Debtor is a Pennsylvania Corporation, organized and existing under the laws of Pennsylvania with an address of 711 Thomson Park Drive, Cranberry Township, PA 16066.

5. In 1993, the Debtor began doing business as Kiva Han Coffee, a coffee wholesale, distributor, and roaster. The Debtor supplied coffee to many businesses, including Crazy Mocha, a local Pittsburgh chain of coffee shops. In 2018, the Debtor purchased all the assets of Crazy Mocha and begin operating the Crazy Mocha coffee chain.

6. Currently, the Debtor is the owner and operator of Crazy Mocha with 23 locations throughout Allegheny and Beaver Counties in Pennsylvania with a concentration in the downtown Pittsburgh and surrounding areas.

7. Crazy Mocha offers customers a variety of coffee drinks and other specialty drinks, along with pastries, snacks, and related food items.

8. The Debtor also operates Kiva Han Coffee, a roaster and wholesaler of coffee beans and various other products, including tea, specialty drinks, café supplies and equipment.

9. The Debtor is party to a number of leases for real estate out of which it operates its Crazy Mocha and Kiva Han Coffee businesses (the "**Leased Premises**").

10. The Debtor is the owner of certain fixtures, improvements and equipment and other assets located on the Leased Premises.

11. Due to the unprecedented events caused by the COVID-19 Pandemic, the Debtor was initially forced to close its operations for several months.

12. Since the slow reopening of businesses in Pennsylvania, the Debtor has been able to maintain some of the Kiva Han Coffee operations and open seven of its Crazy Mocha locations, while the rest remain temporarily closed.

13. The financial strain caused by the shut-down of operations and the slow reopening process has forced the Debtor to seek protection and reorganization under the Bankruptcy Code.

14. The Debtor continues to operate its businesses and manage its property as a debtor-in-possession under Section 1184 of the Bankruptcy Code.

15. The Debtor employs 26 individuals, 12 part-time and 14 full-time through the operation of its various locations and management with an average monthly gross payroll of approximately $55,000.

16. The Debtor separates it payroll between its corporate and retail divisions. There is a payroll for cooperate employees and a payroll for retail employees. All employees are paid on a bi-weekly basis, which is paid one week in arrears, i.e., pay date for each two-week pay period ending on Friday are made the following Friday. However, the Debtor staggers payment of each payroll so that one of the two payrolls is paid every Friday.

**RELIEF REQUESTED**

17. By this Motion and pursuant to 11 U.S.C. §§ 105(a), 362(d), 363(b) and 507 and Fed. R .Bankr. P. 4001, 6003 and 6004, the Debtor requests entry of an order: (i) authorizing, but not directing, the Debtor to pay or otherwise honor, in its sole discretion, the following Compensation Obligations, Payroll Processing Obligations, Payroll Tax Obligations, Employee Benefit Obligations, and Dependent Life Insurance Obligations (as defined herein, together with any related costs or expenses of administration, collectively, the "**Employee Obligations**") as set forth on **Schedule "1"** hereto; (ii) authorizing, but not directing, the Debtor to continue in its ordinary course of business, prepetition practices, programs, and policies for its employees in effect as of the date hereof and as those practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's business and to honor any related administrative costs and obligations arising thereunder; and (iii) authorizing First Commonwealth Bank to process and honor related transfers.

18. The Debtor further requests that the Bankruptcy Court authorize First Commonwealth Bank to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtor in accordance with this Motion, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that all such Banks be authorized to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtor's instructions.

**The Debtor's Employees**

19. The Debtor has approximately 26 employees: 12 part-time and 14 full-time.

20. The Debtor's employees perform a variety of critical functions for the Debtor, including management, administration, procurement and roasting of coffee beans, preparation of coffee and food related items for delivery to consumers, maintenance, finance and accounting, human resources, safety, security, and other areas crucial to the Debtor's businesses. The employees are fundamental to the success of the Debtor's businesses and continued operations and, as a result, critical to this Bankruptcy Case. A shortage of employees at this critical time would severely damage the debtor's ability to meet the needs of customers and maintain the current level of business as well as to meet the necessary safety requirements in place on account of the COVID-19 Pandemic, therefore jeopardizing the entire reorganization of the Debtor.

**Prepetition Employee Obligations**

21. The Debtor estimates that, as of the Petition Date, the aggregate amount of its unpaid Prepetition Employee Obligations is approximately $12,000.00.

22. By this Motion, the Debtor is not seeking authority to pay to any individual an amount in prepetition Employee Obligations that would exceed the $13,650 priority cap imposed by Section 507(a)(4) of the Bankruptcy Code.

   **A. Compensation Obligations**

23. The Debtor pays its employees' salaries, wages and other compensation (including overtime pay) in exchange for services they provide (the "**Compensation Obligations**"). The Debtor separates its payroll between its corporate division and its retail division.

   - *Corporate Employees:* The Debtor's corporate employees receive payments in arrears on a bi-weekly basis paid on the Friday following the end of the pay-period.

5

- *Retail:* The Debtor's hourly employees receive payments in arrears on a bi-weekly basis paid on the Friday following the end of the pay-period.

Most employees are paid via direct deposit; however, some employees are paid via company check, all of which are processed by ADP through the Debtor's payroll account held at First Commonwealth Bank.

24. As of the Petition Date, the Debtor estimates that the aggregate amount of unpaid Compensation Obligations accrued prepetition totals approximately $8,000.00.

25. By this Motion, the Debtor seeks authorization to satisfy all unpaid prepetition Compensation Obligations as they become due and owning.

   **B.    Payroll Processing Obligations**

26. The Debtor uses ADP to administer payroll for Employees and provide related payroll processing, payroll tax reporting, time entry systems, payment preparation, payroll transfer administration, and other reporting and administrative services (the "**Payroll Processing Obligations**"). The Debtor typically pays approximately $1,200 each month for Payroll Processing Obligations.

27. By this Motion, the Debtor seeks authorization to satisfy all unpaid prepetition Payroll Processing Obligations and to pay Payroll Processing Obligations during the Interim Period as they become due and owing.

   **C.    Payroll Tax Obligations**

28. As an employer, the Debtor is required by law to withhold from certain Employees' salaries, wages, and other compensation amounts related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "**Withholding Taxes**") and to

remit them to the appropriate taxing authorities (collectively, the "**Taxing Authorities**"). The Debtor is also required to make payments from its own funds on account of Social Security and Medicare taxes and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "**Employer Payroll Taxes**" and, together with the Withholding Taxes, the "**Payroll Tax Obligations**").

29. As of the Petition Date, the Debtor estimates that it owes approximately $1,000.00 in Payroll Tax Obligations relating to the prepetition period.

30. By this Motion, the Debtor seeks authorization to satisfy all unpaid prepetition Payroll Tax Obligations and to pay any al all prepetition Payroll Tax Obligations as they become due and owing.

**Employee Benefits**

31. In addition to the aforementioned payment-related obligations, the Debtor maintains various employment benefit plans and policies for its employees, including health care, vision, dental, and life insurance benefits (collectively, the "**Employee Benefits**", and the obligations related thereto, the "**Employee Benefit Obligations**").

A. <u>Health Care Benefits</u>

32. Medical, dental, vision, and other health care benefits (collectively, the "**Health Care Benefits**") are available to eligible employees of the Debtor.

33. The Health Care Benefits employee's and Debtor's contributions ("**Health Care Benefit Obligations**") are in following amounts on a monthly bases:

| Benefit | Provider | Employee Contribution | Debtor's Cont. |
|---|---|---|---|
| Health Care | UPMC | 1072.09 | 1608.14 |

| Dental | Delta | 52.68 | 79.02 |
|---|---|---|---|
| Vision | UPMC | 15.73 | 23.6 |
| **Monthly Total** | | **$1,140.50** | **$1,701.76** |

34. The Debtor seeks authorization for payment of the Health Care Benefit Obligations in the amount of approximately $500.00

   B.  Dependent Life Insurance.

35. The Debtor estimates that it owes approximately $400.00 in prepetition amounts on account of dependent life insurance under the Plan.

36. By this Motion, the Debtor seeks authorization to satisfy all unpaid prepetition Employee Benefit Obligations as and when they arise.

## BASIS FOR RELIEF

*i. The Debtor Should be Permitted to Pay the prepetition Employee Obligations and ongoing post-petition Employee Obligations in the Ordinary Courts of Business*

37. Under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance and sick leave pay," that are "earned within 180 days before" the date on which a debtor's chapter 11 case is commenced are afforded priority unsecured status up to $13,650 per individual (the "**Prepetition Compensation Cap**").

38. Similarly, Section 507(a)(5) of the Bankruptcy Code provides that employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status to the extent of $13,650 per employee covered by such plans, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code. Under Section 1114(e)(2), retiree benefits required to be made before a plan is confirmed have the status of an allowed administrative claim as

provided in section 503.

39. The Debtor will not make payments to any employee more than the Prepetition Compensation Cap on account of the prepetition Compensation Obligations. As priority claims, such Prepetition Employee Obligations must be paid in full before any general unsecured obligations of the Debtor may be satisfied. Accordingly, the relief requested herein likely will affect only the timing of the payment of the Prepetition Employee Obligations and should not prejudice the rights of general unsecured creditors.

40. The Bankruptcy Court may also grant the relief requested herein pursuant to Section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

41. Under Section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so. *See, In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims for suppliers).

42. In addition, the Bankruptcy Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code contains an implied duty of the debtor-in-possession to act as a fiduciary to protect and preserve the estate, including an operating business' going-concern value, on behalf of the debtor's creditors and other parties

in interest. *See Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that payments of prepetition claims that are necessary for continued operations will benefit the interests of all parties); *see also, In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *See also, Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefit and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

43. The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this district and others, and as such, courts have granted relief like the relief requested herein. *See, e.g., In re Heyl & Patterson, Inc.*, No. 16-21620 (CMB) (Bankr. W.D.Pa. May 4, 2016); *In re Riverhound Event Center, L.P.*, No. 14-21180 (JAD) (Bankr.W.D.Pa. Mar. 28, 2014).

44. In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S.

286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disabililty Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits.

45. In a Chapter 11 reorganization, this "doctrine of necessity" as a mechanism by which the court can exercise its equitable power to allow payment of critical prepetition obligations not explicitly authorized by the Bankruptcy Code. *See Lehigh and New England Ry. Co.*, 657 F.2d at 581; *see also In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorized trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtor's continued operation); *In re Structurlite Plastics Corp.*, 86 B.R. 992, 932 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."). The rationale for the doctrine of necessity is consistent with the paramount goals of chapter 11 - "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

46. Payment of Employee Obligations and the continuation of the Employee Benefits are warranted and justified by the facts and circumstances of this Bankruptcy Case. The Debtor's employees are vital to the continued operation of the Debtor's business and necessary for a successful reorganization. Any delay in paying Employee Obligations or cessation of Employee Benefits will adversely impact the Debtor's relationship with its employees as it could irreparably harm the employees' morale, dedication, confidence, and cooperation. Since

many of the employees interact with the Debtor's customers and suppliers on whose continued support and loyalty the Debtor relies, the employees' support for the Debtor's reorganization efforts is key to the Debtor's ongoing operations.

47. Authorization to pay the Payroll Tax Obligations is also warranted because such Payroll Tax Obligations generally give rise to priority claims under section 507(a)(8) of the Bankruptcy Code and, therefore, general unsecured creditors will not be prejudiced by such payment.

48. Further, Withholding Taxes that the Debtor withholds are held in trust for the Taxing Authorities and are not property of the Debtor's estate under section 541 of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53, 66-67 (1990).

49. The Debtor also believes that it is necessary to pay the administrative costs owed to third-party vendors who provide compensation and other benefit-related services and products. Absent the relief requested, the Debtor will be unable to maintain its compensation and benefit programs in an efficient and cost-effective manner. Accordingly, cause exists for the Bankruptcy Court to authorize the Payroll Processing Obligations.

**(ii) Cause Exists to Authorize First Commonwealth Bank to Honor Checks and Electronic Fund Transfers**

50. The Debtor has sufficient funds to pay the amounts described herein in the ordinary course of business. Moreover, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations discussed herein. Accordingly, the Debtor believes that:

    • Checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently;

    • That the Court should authorize First Commonwealth Bank, when requested by the Debtor, to receive, process, honor and pay all checks or wire transfer requests in

respect of the relief requested herein; and

- That First Commonwealth Bank should be able to rely on the Debtor's representations without any duty of further inquiry and without liability for following the Debtor's instructions.

### (iii) Debtor Has Satisfied Bankruptcy Rule 6003(b)

51. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date.

52. As described above, the Debtor's employees are vital to the Debtor's operations. Failure to satisfy obligations with respect to these persons in the ordinary course of business during the first 21 days of this Bankruptcy Case will jeopardize their loyalty and trust, which may cause such individuals to leave the Debtor's employment or service at a time when they are needed most.

53. The disruption to the Debtor's business operations by employee unrest would be severe and potentially irreparable. Moreover, the Debtor's employees rely on the Employee Benefits and the effect could be financially ruinous if the Debtor cannot immediately pay them in the ordinary course of business. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm.

### REQUEST FOR EXPEDITED RELIEF

54. The need for an expedited hearing herein has not been caused by any lack of due diligence on the part of the Debtor or the Debtor's counsel.

55. In the instant case, just cause exists for the Court to hold an expedited hearing on this matter as a obtaining a determination on the Motion under the normal notice period would cause the Debtor to incur harm.

56. Specifically, the Debtor will incur harm if a hearing and interim relief is not granted because the Debtor will be unable to meet is payroll obligations, which could cause its employees to cease providing services to the Debtor and interfere with the Debtor's business operations.

## **RESERVATION OF RIGHTS**

57. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program or policy between the Debtor and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or waiver of the Debtor's right to dispute such claim subsequently.

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, granting the relief requested herein, and Debtor prays that this Court grant such other relief that is just and proper.

Dated: October 20, 2020            Respectfully Submitted,

                             LEECH TISHMAN FUSCALDO & LAMPL, LLC

                             By: /s/ John M. Steiner
                             John M. Steiner, Esq.
                             PA ID No. 79390
                             jsteiner@leechtishman.com
                             Crystal Thornton-Illar, Esq.
                             PA ID No. 93003
                             cthornton-illar@leechtishman.com
                             Matthew J. Burne, Esq.
                             PA ID 314888
                             mburne@leechtishman.com

                             525 William Penn Place
                             28th Floor
                             Pittsburgh, PA 15219
                             (412) 261-1600 (Phone)
                             (412- 227-5551 (Fax)