## IN THE UNTIED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ED'S BEANS, INC.,  D/B/A | : | Bankruptcy Case No. 20-22974-CMB |
| CRAZY MOCHA, | : | |
| CRAZY MOCHA COFFEE, CRAZY | : | |
| MOCHA COFFEE COMPANY, | : | |
| KIVA HAN, KIVA HAN COFFEE, | : | |
| KH AND KHC, | : | |
| | : | |
| Debtor. | : | Chapter 11 (Sub. V) |
| _____ | : | |
| | : | Related Docket Nos.: 411, 413 |
| ONE VILLAGE SQUARE, LLC, | : | |
| | : | Hearing Date: April 27, 2021 at 10:00 a.m. |
| Movant, | : | |
| | : | Response Date: April 27, 2021 at 8:00 a.m. |
| | : | |
| v. | : | |
| ED'S BEANS, INC.,  D/B/A CRAZY | : | |
| MOCHA,CRAZY MOCHA COFFEE, | : | |
| CRAZY MOCHA COFFEE COMPANY, | : | |
| KIVA HAN, KIVA HAN COFFEE, | : | |
| KH AND KHC, | : | |

## OBJECTION TO EXPEDITED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Ed's Beans, Inc. d/b/a Crazy Mocha, Crazy Mocha Coffee, Crazy Mocha Coffee Company, Kiva Han, Kiva Han Coffee, KH, and KHC (the "**Debtor**"), hereby files this Objection to the Expedited Motion for Relief from the Automatic Stay, (the "**Objection**") respectfully representing as follows:

## THE DEBTOR

1.    On October 19, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under, Title 11, Chapter 11, Subchapter V, of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western

District of Pennsylvania (the "**Bankruptcy Court**") at the above-captioned case number

(the "**Bankruptcy Case**").

2.    On October 20, 2020, the United States Trustee filed a Notice of Appointment of William

G. Krieger as the Subchapter V Trustee.

3.    The Debtor is a Pennsylvania corporation, organized and existing under the laws of

Pennsylvania, with an address of 711 Thomson Park Drive, Cranberry Township, PA

16066. The Debtor continues to operate its businesses and manage its property as a debtor-

in-possession under Section 1184 of the Bankruptcy Code.

## **BACKGROUND**

4.    In 1993, the Debtor began doing business as Kiva Han Coffee, a coffee wholesale,

distributor, and roaster.  The Debtor supplied coffee to many businesses, including Crazy

Mocha, a local Pittsburgh chain of coffee shops.  In 2018, the Debtor purchased all the

assets of Crazy Mocha and begin operating the Crazy Mocha coffee chain.

5.    Currently, the Debtor is the owner and operator of Crazy Mocha, which has locations

throughout Allegheny, Beaver, and Westmoreland Counties in Pennsylvania, with a

concentration in the downtown Pittsburgh and the surrounding areas.

6.    Crazy Mocha offers customers a variety of coffee drinks and other specialty drinks, along

with pastries, snacks, and related food items (the "**Crazy Mocha Business**").

7.    The Debtor also continues to operate Kiva Han Coffee, a roaster and wholesaler of coffee

beans and various other products, including tea, specialty drinks, café supplies and

equipment (the "**Kiva Han Business**").

8.     The Debtor is party to several leases (the "**Unexpired Leases**") for real estate out of which it operates its Crazy Mocha and Kiva Han Coffee businesses. One of those leases is the lease between the Debtor and One Village Square, LLC ("**OVS**").

9.     On or about January 22, 2015, OVS and Murman O'Hara Enterprises, Limited Liability Company d/b/a Crazy Mocha Coffee ("**Murman**") entered into a Commercial Lease Agreement (the "**Lease**"), whereby Murman agreed to lease a portion of the premises located at 417 Walnut Street, Sewickley, PA (the "**Premises**") from OVS for use as a coffee shop.

10.    Subsequent to the Lease and as part of the purchase of Crazy Mocha, Murman assigned its interest in the Lease to the Debtor.

11.    Due to the unprecedented events caused by the COVID-19 Pandemic, the Debtor was forced to close all its operations in March of 2020, including the Crazy Mocha coffee shop located on the Premises.

## THE BANKRUPTCY CASE

12.    On November 9, 2020, the Debtor filed its Motion for Order Allowing the Debtor to Defer All Lease Obligation Payments Pursuant to 11 U.S.C. § 365(d)(3) [Doc. No. 95] (the "**Deferral Motion**").  The Court entered an order granting the Deferral Motion, which deferred all lease payments though December 18, 2020 [Doc. 165] (the "**Deferral Order**"). The Court entered a subsequent order extending the deferral of lease payments through February 16, 2021 [Doc. 296] (the "**Second Deferral Order**").

13.    On February 4, 2021, the Debtor and Ablak Holdings, LLC ("**Ablak**"), entered into that certain Asset Purchase Agreement (the "**Stalking Horse APA**") for the sale of the Crazy Mocha Business for a purchase price of $1,500,000.00 (the "**Purchase Price**").

14.     On February 18, 2021, the Debtor filed its Motion for an Order Authorizing and Approving the Sale of Substantially all the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004 to Ablak or the Successful Bidder (as that term is defined in the Sale Motion) [Dkt. 272] (the "**Sale Motion**").

15.     Also, on February 18, 2021, the Debtor filed its First Omnibus Motion Authorizing Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. § 365 of the Bankruptcy Code and F.R.B.P. RULE 6006(A), (C), (E) and (F) [Dkt. 281] seeking the assumption and assignment of certain of the Unexpired Leases (the "**First Omnibus Motion to Assume**") to Ablak or the Successful Bidder.

16.     On February 25, 2021, the Debtor filed its Subchapter V – Small Business Debtor's Chapter 11 Plan of Reorganization Dated as of February 25, 2021 [Dkt. 298] (the "**Plan**").

17.     On February 25, 2021, this Court entered an Order Setting Deadlines and Scheduling Hearing on confirmation of the Plan setting March 29, 2021, as the deadline to object to the Plan, March 29, 2021 as the deadline to cast ballots on the Plan, and scheduling a hearing on confirmation of the Plan for March 31, 2021, at 10:00 a.m. (EST) [Dkt. 299] (the "**Confirmation Hearing**").

18.     On Friday, March 19, 2021, the Debtor was advised by Ablak that it was not prepared to move forward with the sale as currently contemplated and that it would be seeking certain modifications/amendments to the Stalking Horse APA, including the Purchase Price.

19.     On March 29, 2021, the Debtor filed its expedited motion requesting, among other things, that the hearings on the Sale Motion and First Omnibus Motion to Assume be Converted to Status Conferences [Dkt. 357] (the "**Motion to Request Status Conference**").

20.     On March 31, 2021, a status conference was held on all matters (the "**Status Conference**"),

and the Debtor advised the Court that it was attempting to save the Ablak deal and working

to determine how the proposed modified sale terms would affect the economics of the case

generally and the Plan specifically.

21.     As a result of the discussion held on the record at the Status Conference, this Court, among

other things, continued the Sale Motion and the First Omnibus Motion to Assume hearings

to April 27, 2021 and Continued the Confirmation Hearing to May 11, 2021. [Dkt. 361,

362, 364, 365, 366, 367 and 368].

22.     Despite its best efforts, the Debtor was unable to reach an agreement with Ablak on

modified sale terms.

23.     As a result, on April 19, 2021, the Debtor filed Motions to Withdraw the Sale Motion and

the First Omnibus Motion to Assume [Dkt. 404 and 406].  Hearings on these matters are

set for April 27, 2021.

24.     On April 20, 2021, One Village Square, LLC ("OVS") filed its Expedited Motion for Relief

from the Automatic Stay [Doc. No. 411] (the "**Motion for Relief**") seeking relief from the

automatic stay so that OVS can pursue its rights and remedies with respect to the Premises,

including termination of the Lease.

25.     After the Ablak deal fell apart, the Debtor worked quickly and diligently to find another

interested buyer.  Unfortunately, the Debtor was unable to find a buyer for all of the Crazy

Mocha assets, but the Debtor was able to find interested buyers for some of the Unexpired

Leases, including the Lease at issue in the Motion for Relief.

26.     To that end, the Debtor has executed a Letter of Intent ("**LOI**") with Pamela VonBergen

("**VonBergen**") for the sale and purchase of the following nine (9) Crazy Mocha

stores/locations for the purchase price of $500,000: (i) Carnegie Library; (ii) Heritage

Valley Beaver; (iii) Heritage Valley Sewickley; (iv) University of Pittsburgh; (v) One

Mellon Center; (vi) Sewickley; (vii) UPMC-East; (viii)  Brighton Rehabilitation Center;

and (ix) Steel Plaza Subway Station (the "**VonBergen Locations**"). The Sewickley

location is the Premises at issue in the Motion for Relief.

## OBJECTION

27.     The Debtor objects to the Motion for Relief and requests that this Court deny the Motion

for Relief or at least continue the hearing on the Motion for Relief so that it can attempt to

proceed with the sale of the Lease to VonBergen.

28.     The Debtor intends to file a new sale motion and new motion to assume and assign

unexpired leases seeking approval of the sale and assumption and assignment of certain

Unexpired Leases.

29.     If the Motion for Relief is granted, the Debtor may not be able to move forward with the

sale to VonBergen, at least, as it relates to the Lease.

30.     Section 362(d) of the Bankruptcy Code states, in pertinent part,

On request of a party in interest and after notice and a hearing, the court shall grant relief
from stay . . . such as by terminating, annulling, modifying, or conditioning such stay –

(1) For cause, including lack of adequate protection of an interest in property of such party
in interest.

11 U.S.C. §362(d).

31.     "There is no rigid test for determining whether sufficient cause exists to modify an

automatic stay." *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental

Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993). Rather, resolving motions for relief for

"cause" from the automatic stay courts generally consider the policies underlying the

automatic stay in addition to the competing interests of the debtor and the movant. *Id*. In balancing the competing interests of the debtor and the movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. *Id.*

32.   Here, the Debtor will suffer great prejudice if the stay is lifted as the Debtor will be unable to move forward with the sale that the Debtor worked tirelessly to put together after Ablak walked away from the sale as contemplated in the Sale Motion.

33.   While the Debtor appreciates the time and expense that OVS has expended in this Bankruptcy Case, the Debtor does not believe that OVS has suffered as great a hardship as the Debtor on balance.  While OVS is owed post-petition rent, the Debtor submits that the only post-petition rent payments that have truly been missed are the rent payments due after February 17, 2021 given that the Deferral Order and the Second Deferral Order deferred all rent until that time.  Further, the deferred rent can be repaid through the life of a plan. *See* Consolidated Appropriations Act, 2021, Division FF, Section 1001(f)(1).

34.   On balance, if the Motion for Relief is granted, the Debtor may not be able to move forward with the sale, which could result in the conversion or dismissal of this Bankruptcy Case and little to no recovery for most creditors.

35.   Additionally, if the Debtor is able to close on a sale of certain assets, including the Lease, all cure costs of the Lease will be paid through the sale.  Accordingly, OVS will receive full satisfaction of its rent claim.

36.   The Motion for Relief was filed shortly after the sale with Ablak fell apart, and understandably, OVS was concerned that the Debtor may not be able to find a new buyer.

However, the Debtor worked diligently and quickly and found other buyers that were interested in some of its assets, including the Lease.  The Debtor would like the opportunity to move forward with that new sale and its Bankruptcy Case.

37.    If the Court is unwilling to deny the Motion for Relief, the Debtor requests that the Court consider continuing the hearing on the Motion for Relief until after the hearing on the new sale motion, which should be filed in the near future.

WHEREFORE, the Debtor requests that this Court deny the relief requests in the Expedited Motion for Relief from the Automatic Stay.

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Date: April 27, 2021                    By: */s/ Crystal H. Thornton-Illar*
                                        John M. Steiner, Esquire
                                        PA I.D. No. 79390
                                        jsteiner@leechtishman.com
                                        Crystal H. Thornton-Illar
                                        PA I.D. No. 93003
                                        cthornton-illar@leechtishman.com
                                        525 William Penn Place
                                        28th Floor
                                        Pittsburgh, Pennsylvania 15219
                                        (412) 261-1600
                                        Counsel for the Debtor