## IN THE UNTIED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ED'S BEANS, INC.,  D/B/A | : | Bankruptcy Case No. 20-22974-CMB |
| CRAZY MOCHA, | : | |
| CRAZY MOCHA COFFEE, CRAZY | : | Chapter 11 (Subchapter V) |
| MOCHA COFFEE COMPANY, | : | |
| KIVA HAN, KIVA HAN COFFEE, | : | Related Docket No. ——298 |
| KH AND KHC, | : | |
| | : | Docket No. _____ |
| Debtor. | : | |
| _____ | | |
| _____ | : | Hearing Date: August 12, 2021 @ 2:30 p.m. |
| _____ | : | |
| _____ | : | Response Date: August 5, 2021 |

Formatted: No Spacing, Space Before: 0 pt

**SUBCHAPTER V - SMALL BUSINESS DEBTOR'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED AS OF FEBRUARY 25JULY 2, 2021**

This Subchapter V – Small Business Debtor's Amended Chapter 11 Plan of Reorganization dated as of February 25July 2, 2021 (the "**Amended Plan**") is presented to you to inform you of the proposed Amended Plan for restructuring the debt of Ed's Beans, Inc. d/b/a Crazy Mocha, Crazy Mocha Coffee, Crazy Mocha Coffee Company, Kiva Han, Kiva Han Coffee, KH, and KHC (the "**Debtor**") and to seek your vote to accept the Amended Plan.

You are encouraged to carefully review the Amended Plan in full, including all exhibits, schedules and attachments, before deciding how to vote on the Amended Plan.  A list of definitions appears at the end of this document to assist you in your review.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE AMENDED PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE AMENDED PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE AMENDED PLAN, YOU MUST DO SO BY MARCH 29AUGUST 5, 2021.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE AMENDED PLAN MUST BE RETURNED BY MARCH 29AUGUST 5, 2021. ("BALLOT DEADLINE").  THE BALLOT MUST BE MAILED OR ELECTRONICALLY MAILED (EMAIL) TO THE FOLLOWING ADDRESS SO AS TO BE RECEIVED BY THE BALLOT DEADLINE:**

**Leech Tishman Fuscaldo & Lampl, LLC**
**Attn: John M. Steiner, Esq.**
**525 William Penn Place, 28th Floor**

Pittsburgh, PA 15219
jsteiner@leechtishman.com

**Formatted:** Font: Bold

**IF THE DEBTOR DOES NOT OBTAIN THE NECESSARY ACCEPTANCES FROM THE IMPAIRED CLASS OF CREDITORS, THE DEBTOR INTENDS TO PROCEED TO CONFIRMATION OF ITS AMENDED PLAN THROUGH THE "CRAM DOWN" PROVISIONS OF 11 U.S.C. §1191(b).**

**A HEARING ON THE CONFIRMATION OF THE AMENDED PLAN IS SCHEDULED FOR MARCH 31AUGUST 12, 2021, AT 10:00 A2:30 P.M. (PREVAILING EASTERN TIME) BEFORE JUDGE CARLOTA M. BOHM VIA ZOOM VIDEO CONFERENCE APPLICATION ("ZOOM"). TO PARTICIPATE IN AND JOIN A ZOOM HEARING, PLEASE INITIATE AND UES THE FOLLOWING LINK AT LEAST 15 MINUTES PRIOR TO THE SCHEDULED ZOOM HEARING TIME: https://www.zoomgov.com/j/16143800191, OR ALTERNATIVELY, YOU MAY USE THE FOLLOWING MEETING ID: 161 4380 0191.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS AMENDED PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

7/2/25/2021

LEECH TISHMAN FUSCALDO & LAMPL, LLC

/s/ John M. Steiner_____
John M. Steiner
jsteiner@leechtishman.com
Crystal H. Thornton-Illar
cthornton-illar@leechtishman.com
525 William Penn Place, 28th Floor
Pittsburgh, Pennsylvania 15219
(412) 261-1600
Counsel for the Debtor

2

## SUMMARY OF THE AMENDED PLAN AND DISTRIBUTIONS TO CREDITORS

This concise summary of the Amended Plan, consistent with *Local Rule 3016-2*, describes with particularity the treatment of each class of Creditors and the source of funding for the Amended Plan.

The Amended Plan proposes to pay the Debtor's creditors from, for example, cash flow from operations, sale of assets, infusion of capital, and loan proceeds:.

The Amended Plan provides for the following classes of claims and interests for priority claims, secured claims, general unsecured claims, and equity interests:

| Class # | Class Description | Impaired or Unimpaired | Amended Plan Section |
|---|---|---|---|
| 1 | Ally Financial (Auto Loan) | Unimpaired | 2.2.1 |
| 2 | The Bank of New York Mellon (Security Deposit) | Unimpaired | 2.2.1 |
| 3 | First Commonwealth Bank SBA Commercial Term Loan and Line of Credit | Impaired | 2.2.1 |
| 4 | American Express National Bank (Merchant Loan) | Impaired | 2.2.1 |
| 5 | Swift Financial, LLC (PayPal Loan) | Impaired | 2.2.1 |
| 6 | Small Business Administration (EIDL) | Impaired | 2.2.1 |
| 7 | Nissan Motor Acceptance Corp. (Auto Loan) | Impaired | 2.2.1 |
| 8 | Employees Holding Section 507(a)(4) Priority Claims | Impaired | 2.2.2 |
| 89 | General Unsecured Claims | Impaired | 2.2.3 |
| 910 | Equity Interest Holders | Unimpaired | 2.2.4 |

The Amended Plan proposes to pay administrative and priority claims in full unless otherwise agreed.  The Depending on the amount of lease rejection damage claims asserted and allowed, the Debtor estimates approximately 52% to 4% will be paid on account of general unsecured claims pursuant to the Amended Plan.

The specific treatment of the classes of claims and interest are set forth in Article 2 of the Amended Plan.

Only holders of Allowed Claims in a class identified as impaired may vote on whether to accept or reject the Amended Plan.  A class accepts the Amended Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Amended Plan.  Also, a class of Equity Interest holders accepts the Amended Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Amended Plan.  A class that is not impaired is deemed to accept the Amended Plan.

**IF THE DEBTOR DOES NOT OBTAIN THE NECESSARY ACCEPTANCES FROM THE IMPAIRED CLASS OF CREDITORS, THE DEBTOR INTENDS TO PROCEED TO CONFIRMATION OF ITS AMENDED PLAN THROUGH THE "CRAM DOWN" PROVISIONS OF 11 U.S.C. §1191(b).**

LEECH TISHMAN FUSCALDO & LAMPL, LLC

*/s/ John M. Steiner* _____
John M. Steiner
jsteiner@leechtishman.com
Crystal H. Thornton-Illar
cthornton-illar@leechtishman.com
525 William Penn Place, 28th Floor
Pittsburgh, Pennsylvania 15219
(412) 261-1600
Counsel for the Debtor

**ARTICLE 1I**
**DISCLOSURES REGARDING THE DEBTOR(S) AND THE BANKRUPTCY CASE**

**1.1    Describe Nature of the Debtor's Business**

The Debtor is the owner and operator of Crazy Mocha, a local Pittsburgh chain of coffee shops with locations throughout Allegheny, Beaver, and Westmoreland Counties in Pennsylvania, with a concentration in the downtown Pittsburgh and the surrounding areas. Crazy Mocha offers customers a variety of coffee drinks and other specialty drinks, along with pastries, snacks, and related food items.

The Debtor also operates Kiva Han Coffee, a roaster and wholesaler of coffee beans and various other products, including tea, specialty drinks, café supplies and equipment.

**1.2.    Describe History of Debtor's Business Operations**

In 1993, the Debtor began doing business as Kiva Han Coffee, a coffee wholesale, distributor, and roaster.  The Debtor supplied coffee to many businesses, including Crazy Mocha.  In 2018, the Debtor purchased all the assets of Crazy Mocha and begin operating the Crazy Mocha coffee chain.

Upon purchase of the Crazy Mocha assets, the Debtor was assigned a number of leases for real estate out of which it operatesoperated the Crazy Mocha locations.  The Debtor also leases its Kiva Han location.

Due to the COVID-19 Pandemic, the Debtor was effectively forced to close all of its locations in March 2020, in compliance with various State and local mitigation and health and safety orders that.  These orders either forced the complete closure, or at a minimum, severely impacted the operation of Pennsylvania businesses, like Crazy Mocha, due to restrictions placed on food and beverage businesses regarding in-person/indoor dining, take-out, capacity limitations and/or other similar restrictions.  These restrictions and closures led to the filing of this Bankruptcy Case. The Debtor determined that the best course of action in this Bankruptcy Case is to sell all assets used in connection with the Crazy Mocha Business and reorganize the Kiva Han Business as set forth in this Amended Plan.

**1.3.    Describe Prepetition Legal Structure and Ownership**

The Debtor is a Pennsylvania Corporation, organized and existing under the laws of Pennsylvania with an address of 711 Thomson Park Drive, Cranberry Township, PA 16066.

The stock of the Debtor is made up of common stock and non-voting stock.  Edward Wethli owns 59.93% of the Debtor and all of the common stock.  The nonvoting stock is owned by the following people in the following percentages: 1) Marcie Wethli - 9.175%; 2)

5

Nicholas Redondo - 3.434%; 3) Timothy Albinese - 20.60%; and 4) Timothy Burgan - 6.867%.

**Formatted:** Justified

**1.4.** **Describe All Debtor's Assets**

| Asset | Reorganization Value | Liquidation Value | Liens Encumbering the Asset | Value of Any Claimed Exemption | Value of the Estate's Interest in the Asset[1] |
|---|---|---|---|---|---|
| Petty Cash | $3,736.82210,393.40 | $3,736.82210,393.40 | $0.00 | N/A | $3,736.82210,393.40 |
| Operating Account- First Commonwealth | $20,214.0419,706.96 | $20,214.0419,706.96 | $2,937,381.3165 | N/A | $0.00 |
| Payroll Account – First Commonwealth | $5,779.911,792.51 | $5,779.911,792.51 | $2,937,381.3165 | N/A | $0.00 |
| Electronic Transfers- First Commonwealth | $33,722.334,284.75 | $33,722.334,284.75 | $2,937,381.3165 | N/A | $0.00 |
| Citizens Bank Account | $17,517.1713,731.46 | $17,517.1713,731.46 | $2,937,381.3165 | N/A | $0.00 |
| JP Morgan Chase Account | $0.00 Account Closed | $0.00 Account Closed | $2,937,381.3165 | N/A | $0.00 |
| Paypal Reserve Account | $49.175,121.59 | $49.175,121.59 | $2,937,381.3165 | N/A | $0.00 |
| Accounts Receivable | $55,705.92139,045.39 | $55,705.92139,045.39 | $2,937,381.3165 | N/A | $0.00 |
| Advances to Shareholder made over several years[2] | $0.00 | $0.00 | $2,937,381.3165 | N/A | $0.00 |
| Inventory Crazy Mocha | $3,500.00 | $3,500.00 | $2,937,381.3165 | N/A | $0.00 |
| Inventory Kiva Han | $56,721.49668.50 | $56,721.49668.50 | $2,937,381.3165 | N/A | $0.00 |
| Furniture, Fixtures, and Equipment in | $375,000 | $375,000 | $2,937,381.3165 | N/A | $0.00 |

[1] Calculated by subtracting from the Liquidation Value the amount of liens encumbering the asset and the value of any claimed exemption. *See* Definition of Value of Estate's Interest in Article 7.

[2] Advances to shareholder Edward Wethli made over approximately 20 years totaling $527,771.20. The Debtor submits that the full amount of the shareholder advance is uncollectable, and, therefore, the value is $0.00. $52,800 of this amount was paid to Mr. Wethli in 2020 but was incorrectly booked as a shareholder advance when it should have been booked as wages.

| Stores | | | | | |
|---|---|---|---|---|---|
| Furniture, Fixtures, and equipment for Kiva Han | $110,808.89 | $110,808.89 | $2,937,381.3165 | N/A | $0.00 |
| 2012 Chevrolet K 1500 Suburban LT | $10,000 | $10,000 | $0.00 | N/A | $10,000 |
| 2008 Dodge Caliber RT | $1,200 | $1,200 | $0.00 | N/A | $1,200 |
| 2015 Chevrolet Express G250 | $11,500 | $11,500 | $5,322.50 | N/A | $6,177.50 |
| 2018 Nissan NV200 | $13,950 | $13,950 | $14,290.94 | N/A | $0.00 |
| 2018 Honda Accord Touring (Lease) | $18,000 | $18,000 | $0.00 | N/A | $0.00 |
| 2012 Nissan NV 1500 | $8,500 | $8,500 | $0.00 | N/A | $8,500 |
| 2019 Nissan Sentra (Lease) | $17,000 | $17,000 | Leased | N/A | $0.00 |
| Store Leases | Unknown | Unknown | $2,937,381.3165 | N/A | $0.00Unknown |
| Various Fictitious Names and Trademarks (both domestically and internationally) for Kiva Han, Crazy Mocha and Crazy Mocha Coffee Company | Unknown | Unknown | $2,937,381.65 | N/A | $0.00 |
| Security Deposit | $3,600 | $3,600 | $3,600 | N/A | $0.00 |
| | | | | | |
| TOTALS | $762,905.74823,803.45 | $762,905.748 23,803.45 | $2,956,994.75960 ,595.09 | N/A | $29,614.3236,2 70.90 |

**1.5    Identify any assumptions made concerning the Asset's value particularly to the extent the value of the asset is different from what was scheduled as of the Petition Date**

Other than updated cash balances, accounts receivable and inventory balances, and the sale of certain of the Crazy Mocha Business assets (described below), there have been no changes in assumptions on the value of the assets since filing the schedules.

**1.6.    Identify Debtor's Liabilities**

The table below discloses the Debtor's liabilities by aggregating the total amount of claims

in each class under the Amended Plan.  For a breakdown of specific claim amounts *see* Article 2, Sections 2.1 and 2.2.

| Class # | Description of Liability by Class | Total Approx. Amount of Claims in the Class | Disputed (D) Unliquidated (U) Contingent (C) |
|---|---|---|---|
| Unclassified | Administrative Claims | $~~511,013.84~~671,823.08 | |
| Unclassified | Priority Tax Claims | $~~28,278.06~~27,964.49 | |
| ~~1,~~3, 4, 5 and ~~5~~6 | Secured Claims (all assets) | $2,937,381.~~31~~ (~~$1,222,872.50~~65 ($518,000 treated as ~~secured~~Allowed Secured Claims and $~~1,737~~2,419,381.~~31~~65 treated as Allowed Class ~~8 unsecured~~9 Unsecured Claims) | |
| 1, 2, ~~6~~ and 7 | Secured Claim (specific assets) | $23,213.44 ($22,872.50 treated as secured and $340.94 treated as Class ~~8~~9 unsecured) | |
| 8 | Employee Section 507(a)(4) Priority Claims | $10,000 | |
| ~~8~~9 | Unsecured Claims | $2,~~189,226.33 (Does~~338,064.91 in filed or scheduled unsecured claims (does not include $2,419,722.59 in unsecured deficiency ~~amount~~amounts for Classes ~~1,2,~~3,4,5,6, and 7) | |
| | | | |
| **TOTAL:** | | $5,~~740,801.99~~867,424.35 | |

### 1.7.    Current and Historical Financial Conditions

The Debtor's relevant financial data, including the Debtor's current and 12-month historical financial performance based upon its Profit & Loss (P&L) statement, is summarized, below.

January 2020 – November 2020 P&L:

Total Income:                $2,220,802.55

Total Costs of Goods Sold:    $(1,064,776.93)

Gross Profit                 $1,156,025.62

Total Expenses:              $(2,049,532.99)

| | |
|---|---|
| Net Operating Income: | $(893,507.37) |
| Other Expenses: | $ (15,439.48) |
| NET INCOME | $(908,946.76) |

Information concerning the Debtor's post-petition (current) financial performance is found in the monthly operating reports filed of public record by the Debtor with the Bankruptcy Court.

The Debtor's financial projections providing information on the Debtor's ability to fund its obligations under this Amended Plan are found in Article 3 and Schedules 3.1 and 3.2 of this Amended Plan.

**1.8.    Events Leading to the Filing of the Bankruptcy Case**

On the Petition Date, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Bankruptcy Case is pending in the US Bankruptcy Court for the Western District of Pennsylvania.

Due to the COVID-19 Pandemic, the Debtor was effectively forced to close all of its locations in March 2020, in compliance with various State and local mitigation and health and safety orders that either forced the complete closure, or at a minimum, severely impacted the operation of Pennsylvania businesses, like Crazy Mocha, due to restrictions placed on food and beverage businesses regarding in-person/indoor dining, take-out, capacity limitations and/or other similar restrictions.  Not to mention, these same mitigation and health and safety orders essentially required employees of non-essential businesses to work remotely and not from their offices and office buildings, which had a dramatic impact on the number of customers that would otherwise frequent the Crazy Mocha coffee shops.  Some of the COVID-19 restrictions were lifted in June 2020, and the Debtor re-opened some of its locations. Due to a recent resurgence in COVID-19 cases in late 2020, new State and local orders and restrictions were executed and put in place that effectively prohibited, once again, in-person/indoor dining and required people to work from home unless it was impossible to do so.  *See* Order of the Governor of the Commonwealth of Pennsylvania For Mitigation, Enforcement, and Immunity Protections dated November 23, 2020 and Order of the Governor of the Commonwealth of Pennsylvania Directing Limited-Time Mitigation (collectively, the "**Governor's Orders**").

Describe how the Debtor has cured the problems that lead to the filing for its successful rehabilitation.

The Debtor determined that the best course of action in this Bankruptcy Case is to sell all assets used in connection with the Crazy Mocha Business and reorganize the Kiva Han Business as set forth in this Amended Plan.
.
**1.9.    Significant Events During the Bankruptcy Case, which mayWhich May Include:**

1.9.1   Any asset sales outside the ordinary course of business, debtor-in- possession financing, or cash collateral orders:

On October 20, 2020, the Debtor filed an Emergency Motion or Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C.§§ 105 and 363, F.R.B.P. Nos. 2002, 4001 and 9014 and W.PA.LBR 4001-2 [Doc. No. 16], which was granted by an Order entered on October 22, 2020 [Doc. No. 60]. A modified Consent Stipulation Allowing Interim Use of Cash Collateral and Establishing Adequate Protection was entered on November 10, 2020 [Doc. No. 103]. On June 7, 2021, the Bankruptcy Court entered an Order approving a second stipulation granting adequate protection and extending the Debtor's use of cash collateral through June 30, 2021 [Doc. No. 552]. The Debtor anticipates that further stipulations will be filed further extending its use of cash collateral and granting adequate protection, as needed, through and including confirmation of the Amended Plan.

The Debtor determined that the best course of action in this Bankruptcy Case is to sell all assets used in connection with the Crazy Mocha Business and reorganize the Kiva Han Business. On January 8, 2021, the Debtor and Ablak executed a Letter of Intent contemplating the sale and purchase of substantially all of the assets used in connection with the Debtor's operation of the Crazy Mocha coffee shops for the purchase price of $1,500,000.00. Subsequently, Ablak and On February 4, 2021, the Debtor and Ablak entered into that certain Asset Purchase Agreement (the Stalking Horse"Ablak APA dated February 4, 2021") for the sale of the Crazy Mocha Business for a purchase price of $1,500,000.00.

On February 12, 2021, the Debtor filed the Expedited Motion to Approve: (I) the Bid Procedures; (II) Break-UPUp Fee; and (III) Notice of Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004, and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 255], which was granted on February 18, 2021 [Doc.(the "Ablak Bid Procedures Order") [Doc. No. 279].

On February 18, 2021, the Debtor filed the Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 272] (the "Sale Motion"). Objections to the sale must be filed with the Court on or before March 16, 2021, and a Zoom hearing on consideration of the Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3has been set for March 23, 2021, at 2:00 p.m. (Eastern Prevailing Time).272] (the "Ablak Sale Motion"). A hearing on the Albak Sale Motion was scheduled for March 31, 2021.

On February 18, 2021, the Debtor filed its First Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Dk. 281]. Pursuant to a Notice of Zoom

10

~~Hearing and Response Deadline Regarding the First Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Dk. 282], objections to the assumption and assignment of the Unexpired Leases, including the proposed cure amount, or the adequacy of assurance of future performance, must be filed with the Court on or before **March 8, 2021**, and a Zoom hearing on consideration of the First Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) has been set for **March 23, 2021, at 2:00 p.m.** (Eastern Prevailing Time).~~

Pursuant to the Ablak Bid Procedures Order, competing bids were due on or before March 18, 2021, but the Debtor did not receive any other bids.

On February 25, 2021, the Debtor filed its Subchapter V- Small Business Debtor's Chapter 11 Plan of Reorganization Dated as of February 25, 2021, [Dkt. 298] (the "**Original Plan**").

On March 19, 2021, Ablak advised the Debtor that it was not prepared to move forward with the sale and that it would be seeking certain modifications/amendments to the Ablak APA, including the purchase price.

Despite its best efforts, the Debtor was unable to reach an agreement with Ablak on modified sale terms and Ablak advised it was not going to move forward with a sale.  As a result, the Debtor withdrew the Ablak Sale Motion.

The Debtor received a $75,000 deposit on the Ablak sale and submits that due to Ablak's breach of the Ablak APA, the deposit has been forfeited.  Accordingly, the Debtor intends to use the deposit on the Effective Date to pay Allowed Administrative Claims, including post-petition administrative rent Claims.

On April 17, 2021, the Debtor and Pamela VonBergen, now by assignment Crazy Mocha, LLC, executed a Letter of Intent contemplating the sale and purchase of substantially all of the assets used in connection with the operation of nine (9) Crazy Mocha coffee shops for the purchase price of $500,000.00 (the "**LOI**").

Subsequently, Buyer and the Debtor entered into an asset purchase agreement for the purchase of certain of the Debtor's Crazy Mocha Business assets dated April 27, 2021, (the "**Stalking Horse APA**"), for a purchase price of $500,000.00 (the "**Purchase Price**").

On April 29, 2021, the Debtor filed the Motion for Order Authorizing and Approving: (I) the Sale of Certain Crazy Mocha Assets Free and Clear of all Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 and (II) Certain Bid Procedures [Doc. No. 440] (the "**Sale Motion**").

11

On May 13, 2021, the Debtor filed an amended Stalking Horse APA [Doc. No. 486] (the "**Amended Stalking Horse APA**") to included additional Crazy Mocha Business assets and increase the Purchase Price to $650,000 (the "**Amended Purchase Price**").

After notice and hearing held on May 26, 2021, the Bankruptcy Court entered an order Authorizing and Approving: (I) the Sale of Certain Crazy Mocha Assets Free and Clear of all Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 and (II) Certain Bid Procedures [Doc. No. 530], approving the sale to Buyer pursuant to the Amended Stalking Horse APA (the "**Sale Order**").

Formatted: Font color: Auto

Pursuant to the Sale Order, Pamela VonBergen, ("**VonBergen**"), now by assignment Crazy Mocha, LLC ("**Crazy Mocha**" and together with VonBergen, the "**Buyer**"), was found to have made the highest and best offer for these assets in the amount of $650,000 (the "**Purchase Price**") and the sale of the assets was approved to Buyer in accordance with the terms and conditions of the Sale Order and the Amended Stalking Horse APA.

On May 28, 2021, the Debtor and Buyer closed on the sale (the "**Closing**").

The Debtor received $671,423.55 at Closing from the Buyer, which included the $650,000 Purchase Price as well as additional amounts to be distributed by the Debtor to certain landlords for security deposits and prepaid rent (the "**Additional Payments**").

After the Closing, the following disbursements were made on June 1, 2021, pursuant to the Sale Order:

| | |
|---|---|
| Purchase Price and Additional Payments: | $671,423.55 |
| | |
| LESS: | |
| | |
| First Commonwealth Bank (1st Lien) | ($200,000.00) |
| Aaron Fox Trust (Cure) | ($33,421.88) |
| Aaron Fox Trust (Security Deposit) | ($3,849.55) |
| Carnegie Library of Pittsburgh (Cure) | ($3,500.00) |
| Heritage Valley Health System (Cure)[3] | ($16,176.00) |
| One Village Square (Cure) | ($42,123.44) |
| One Village Square (Security Deposit) | ($10,499.00) |
| Port Authority of Allegheny County (Cure) | ($13,227.00) |
| The Bank of New York Mellon (Cure) | ($33,372.01) |

---

[3] The distribution to Heritage Valley Health System was made on June 8, 2021, rather than on June 1, 2021, because the Debtor had to confirm the correct address prior to distribution.

| | |
|---|---|
| The Bank of New York Mellon (Security Deposit) | ($2,835.00[4]) |
| The Bank of New York Mellon (Prepaid Rent) | ($4,270.00) |
| The Pittsburgh Cultural Trust (Cure) | ($39,659.00) |
| University of Pittsburgh (Cure) | ($10,253.82) |
| | |
| TOTAL | ($413,186.70) |
| **Balance of Funds:** | **$258,236.85** |

Pursuant to the Sale Order, the balance of the funds is being held by Debtor's counsel in its IOLTA Trust account pending further order of this Court.

Pursuant to North Suburban Order (defined below), the Debtor was authorized to pay to North Suburban Land Company, Inc., the North Suburban Rent Payment (defined below) leaving a balance of Net Sale Proceeds (defined below) of $237,236.85.

**1.9.2**        The identity of professionals approved by the Bankruptcy Court:

On October 29, 2020, the Debtor filed the Application for Order Authorizing the Debtor to Employ Leech Tishman Fuscaldo & Lampl, LLC, as Counsel, *Nunc Pro Tun*c, as of the Petition Date [Doc. 78], which was approved by an order entered on November 30, 2020 [Doc. No. 135].

On November 24, 2020, the Debtor filed the Application to Employ Hill, Barth & King as Accountant, *Nunc Pro Tunc* [Doc. No. 119], which was approved by an order entered on December 16, 2020 [Doc. NONo. 162].

Shortly after the filing of the Petition William H. Krieger was appointed as the Subchapter V Trustee.

**1.9.3**   Any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Bankruptcy Court:

There is pending litigation before the National Labor Relations Board, Region 6 at Case Nos: 16 CA-265396 and 16-CA-265574.  It is anticipated that this matter will be settled through the filing of a motion to approve settlement under F.R.B.P. 9019.

**1.9.4**   Any steps taken to improve operations and profitability of the Debtor:

Due the effects of the COVID-19 Pandemic, the Debtor closed many of its stores in order to avoid losses and left open those that remained profitable.  The Debtor sold 10 of its Crazy Mocha Business locations and closed the remaining store locations (including the

---

[4] The Bank of New Mellon was erroneously overpaid by $30.00.  The Debtor's counsel has requested that The Bank of New York Mellon return the $30.00 overpayment.

rejection of the leases for those locations).  The Debtor continues to operate the Kiva Han Business and is in negotiations with certain Chinese persons and entities to attempt to expand the Kiva Han and Crazy Mocha brand, product, revenue and business in China.

**1.10.** **Projected Avoidance Actions**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other Avoidance Actions.

**1.11** **Reservation/Preservation of Rights for Other Claims and/or Causes of Action**

The Debtor is investigating potential claims and/or causes of action against Ablak for damages suffered by the Debtor and the Debtor's estate due to, among other things, Ablak's breach of the Ablak APA and other actions/inactions of Ablak relating to the sale of the Debtor's assets to Ablak.  The Debtor specifically reserves and preserves all rights in and relating to such claims and/or causes of action and nothing in this Amended Plan or the Confirmation Order shall be considered a waiver or release of said claims and/or causes of action.

## ARTICLE 2

## THE AMENDED PLAN

**2.1** **Treatment of Unclassified Claims**

### 2.1.1 Administrative Claims

Each Allowed Administrative Claim shall be paid as follows: (a) in full on the Effective Date, or (b) as provided under this Amended Plan and 11 U.S.C. §1191(e), or (c) in such amounts and on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor, or (c) as ordered by the Court.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Amended Plan.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Rent Expenses arising in the ordinary course of business after the Petition Date for RentRejected Leases for the period November 2020 through May 2021 | $227,332.71425 Sixth Avenue Associates Unit B Master Tenant $9,561.30<br><br>Baum Boulevard Investors, LP $44,082<br><br>Brady Building, LLC (Ross Street) $13,803.30 | Administrative Rent Claims will be paid in full at the Closing on the sale of the assets of the Crazy Mocha BusinessEffective Date. |

14

Formatted Table

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| | Brentwood Towne Square Associates $21,560<br><br>Ellsworth Center Company $22,673<br><br>Forrest City Bessimer Court Associates, LP $28,457.17<br><br>Hertz Gateway Center, LP $13,895.91<br><br>North Suburban Land Company $48,214.95<br><br>Pittsburgh SSW1 Note Owner, LLC $29,407<br><br>Southpointe Town Center LP $24,115.42<br><br>UPMC East $10,640<br><br>William Barron $18,480<br><br>TOTAL: **$284,890.05** | |
| Expenses arising in the ordinary course of business after the Petition Date for electric service provided by Duquesne Light Company | Acct#: 0209074285 Current Balance $845.67<br><br>Acct#: 0429885140 Current Balance $989.11<br><br>Acct#: 0516788049 Current Balance $1,351.45819.34<br><br>Acct#: 3195466015 | Payment through the Amended Plan as follows: Paid in full in equal monthly installments for 36 months pursuant to 11 U.S.C. § 1191(e).<br><br>Duquesne Light Company: $163.77/mo. 254.97/mo. for 35 months and a final payment of $255.14 on the 36th month. |

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|-------------------|
| | Current Balance $~~563.61~~ 775.60<br><br>Acct#: 3555729553<br>Current Balance $882.49<br><br>Acct#: 3711301904<br>Current Balance $410.46<br><br>Acct#: 3752144775<br>Current Balance $~~727.45~~893.12<br><br>Acct#: 5817955781<br>Current Balance $~~1,575.38~~<br><br>Acct#: ~~0209074285~~<br>~~Current Balance~~<br>$~~689.01~~2,099.60<br><br>Acct#: 7318368977<br>Current Balance $463.70<br><br>TOTAL: **$9,179.09** | |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date. | Schneider's Dairy, Inc. **$1,495.26**<br><br>Royal Coffee New York, Inc. **$11,978.87** | Payment through the Amended Plan as follows:  Paid in full in equal monthly installments for 36 months pursuant to 11 U.S.C.§ 1191(e).<br><br>Schneider's Dairy, Inc.: $41.54/mo.<br><br>Royal Coffee New York, Inc.: $332.75/mo. |

**Formatted Table**

**Formatted:** Widow/Orphan control

**Formatted:** Font: Bold

**Formatted:** Font: Bold

16

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|-------------------|
| Professional fees, as approved by the Bankruptcy Court | Leech Tishman Fuscaldo & Lampl (Debtor's Counsel) $250,000 ($275,000, Less Application of $25,000 Retainer) **$308,750**<br><br>Hill, Barth & King (Debtor's Accountant) **$15~~25~~,000** | Upon Application under §330 and Bankruptcy Court approval, Payment through the Amended Plan as follows:<br><br>Leech Tishman: $~~166,250 paid at the Closing~~225,000 on the ~~sale~~Effective Date (which includes application of the ~~assets of the Crazy Mocha Business.~~$25,000 retainer).  The balance of $83,750 to be paid over 36 months at $1,000/mo. from January 1, 2022, to December 31, 2022, $3,000/mo. from January 1, ~~2021~~2023, to ~~March~~July 31, 2024, and a one-time payment of $~~26~~14,750 on ~~April 30~~August 31, 2024.<br><br>Hill, Barth & King: $~~8,750 paid at the Closing~~17,000 on the ~~sale of the assets of the Crazy Mocha Business.~~  The balance of $6,250 ~~to be paid~~Effective Date of the |
| ~~Chapter 5~~Subchapter V Trustee Fees | **$~~8~~18,000** | Upon application under §330 and after Bankruptcy Court approval, payment through the Amended Plan as follows: Paid in full ~~at the Closing~~ on the ~~sale of the assets of the Crazy Mocha Business~~ Effective Date. |
| ~~TOTAL~~Internal Revenue Service | **$~~511,013.84~~11,682.37** | The IRS administrative claim of $11,682.37 shall be paid as follows: (a.) the sum of $5,841.19 shall be paid on or before December 31, 2021; (b.) The sum of $5,841.19 shall be paid on or before December 31, 2022; (c.) No interest or penalties shall accrue on this administrative claim so long as the Debtor makes the timely payments set forth above; and (d.) If the Debtor fails to make the timely payments of the administrative claim, then the remaining amount, together with |

Formatted Table

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: Bold

Formatted: Font: Bold

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
|  |  | all accrued penalties and interest, shall be immediately due and payable |
| PA Department of Revenue | $847.44 | Paid in Full on the Effective Date |
| Total Administrative Claims | $671,823.08 |  |

**Formatted Table**

### 2.1.2   Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.  A list of holders of priority claims who have either been scheduled by the Debtor or who filed a proof of claim is attached hereto and marked as Exhibit 1.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

**Formatted:** Indent: First line:  0"

| Taxing Authority | Tax Type | Claim Amount | Amended Plan Treatment |
|---|---|---|---|
| United States Internal Revenue Service | Unpaid FICA and FUTA | $16,841.98528.41 | In full and final satisfaction of the Claims of the United States Internal Revenue Service (IRS), the IRS will be paid $16,528.41 plus 3% interest per annum at regular monthly installments of $467.83480.67 over 36 months. |
| Pennsylvania Department of Revenue | Unpaid Corp. Sales and Franchise Taxes. | $11,436.08 | In full and final satisfaction of the Claims of the Pennsylvania Department of Revenue, the PennsylvaniaThe PA Department of Revenue will be paid $11,436.08 plus 3% interest per |

| | | | annum at regular monthly installments of $~~317.66~~332.57 over 36 months. |
|---|---|---|---|

**2.2**    <u>Classification and Treatment of Claims and Equity Interests</u>

**2.2.1   Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to §1190(3) of the Code as set forth below, if applicable. A list of holders of secured claims who have either been scheduled by the Debtor or who filed a proof of claim is attached hereto and marked as Exhibit 2.

The following table lists the classes of the Debtor's Secured Claims and their proposed treatment under the Amended Plan:

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---|---|---|---|---|---|
| 1 | Creditor Name: Ally Financial<br><br>Allowed Secured Amt.: $5,322.50<br><br>Collateral description: 2015 Chevrolet Express G250 VIN#1GCWGGCF8F1111 6709<br><br>Priority of lien: First | N | Unimpaired | The Debtor will assume the Retail Installment Sale Contract and continue to make payments of $587.09 until paid in full. Lien on collateral retained until payment in full on the Retail Installment Sale Contract at which time the lien will be released and extinguished. | No<br><br>Deemed to have accepted the Amended Plan Pursuant to Section 1126(f) of the Bankruptcy Code. |

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---------|-------------|----------------|----------------------|-----------|------------------|
| 2 | Creditor Name: The Bank of New York Mellon<br><br>Allowed Secured Amt.: $3,600<br><br>Collateral description: Security Deposit<br><br>Priority of lien: First<br><br>Value of Interest in Collateral: $3,600 | N | Unimpaired | In full satisfaction of The Bank of New York's secured claim, The Bank of New York will retain the $3,600 security deposit and its lien will be released and extinguished. | No. Deemed to have accepted the Amended Plan Pursuant to Section 1126(f) of the Bankruptcy Code |
| 3 | Creditor Name: First Commonwealth Bank<br><br>Allowed Secured Amt.: $2,376,433.09 (SBA Commercial Term Loan)<br><br>Allowed Secured Amt.: $251,275.34 (SBA Commercial Line of Credit)<br><br>Collateral Description: Substantially all assets of the Debtor<br><br>Priority of lien: First<br><br>Value of Interest in Collateral: $1,700,000 | NPursuant to Order Dated March 30, 2021 [Doc. No. 358], the value of First Commonwealth's secured claim is $1,700,000 | Impaired | On account of its first priority liens on substantially all assets of and pursuant to the DebtorSale Order, First Commonwealth Bank will receive received payment of $200,000 at the Net Sale Proceeds from Closing on the sale of the Crazy Mocha Business. Estimated payment is $1,000 assets and on the Effective Date will receive an additional payment of $100,000. Upon Closing on the sale of the Crazy Mocha Business assets, the liens and claims of First Commonwealth Bank | Yes |

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---------|-------------|----------------|------------------------|-----------|------------------|
|  |  |  |  | will bewere released and extinguished as to those assets and will transfertransferred to the proceeds of sale. First Commonwealth Bank will retain its liens and claims on the Crazy Mocha Business assets located, or formerly located, within the locations that were closed and the leases rejected. Pursuant to Order of Court dated June 7, 2021 [Doc. No. 552], First Commonwealth Bank was granted relief from stay to pursue its rights and remedies in and to those assets located within the closed locations. On account of its first priority lien in the remainder of the Debtor'sremaining assets of the Debtor, including the Kiva Han Business assets, First Commonwealth Bank will be granted a first priority lien on the remaining assets of the Debtor up to the amount of $200218,000, which amount will be paid by the Debtor in equal monthly installments |  |

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---------|-------------|----------------|-----------------------|-----------|------------------|
| | | | | ~~over~~using a  15 ~~years~~ loan amortization at the Prime Rate plus 1.5%, with a 5 ~~-~~year balloon.  Monthly payment will be $1,~~555.66~~695.67. Upon payment of the $~~200~~218,000, First Commonwealth Bank's claims will be satisfied in full and its liens and claims against the Debtor's assets will be released and extinguished.<br><br>The remainder of First Commonwealth Bank's secured claim is bifurcated and will be treated as an unsecured claim in Class 8 9, totaling approximately $~~1,427~~2,209,708.~~09~~43 | |
| 4 | Creditor Name: American Express National Bank (Merchant Loan)<br><br>Collateral description: Substantially all assets of the Debtor<br><br>Allowed Secured Amt.: $52,846.70<br><br>Priority of lien: Second<br><br>Value of Interest in Collateral: $0.00 | ~~N~~Pursuant to Order Dated March 30, 2021 [Doc. No. 358], the claim of American Express National Bank is completely unsecured.  Also, on March 26, 2021, American Express National Bank filed an Amended Proof of Claim, Claim No. 20-2, listing their claim as unsecured. | Impaired | Treated completely as unsecured deficiency claim in Class 8 9.<br><br>On the Effective Date of the Amended Plan, American Express National Bank's liens and claims in and upon the Debtor's assets will be released and extinguished | Yes |

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---|---|---|---|---|---|
| | | | | | |
| 5 | Creditor Name: Swift Financial, LLC, as serving agent for WebBank (PayPal Loan)<br><br>Allowed Secured Amt.: $104,514.88<br><br>Collateral description: Substantially all assets of the Debtor<br><br>Priority of lien: Third<br><br>Value of Interest in Collateral: $0.00 | ~~N~~Pursuant to Order Dated March 30, 2021 [Doc. No. 358], the claim of Swift Financial, LLC, is completely unsecured | Impaired | Treated completely as unsecured deficiency claim in Class ~~8~~9<br><br>On the Effective Date of the Amended Plan, Swift Financial, LLC's, as servicing agent for WebBank, liens and claims in and upon the Debtor's assets will be released and extinguished | Yes |
| 6 | Creditor Name: Small Business Administration (EIDL Loan)<br><br>Allowed Secured Amt.: $152,311.64<br><br>Collateral description: Substantially all assets of the Debtor<br><br>Priority of lien: Fourth<br><br>Value of Interest in Collateral: $0.00 | ~~N~~Pursuant to Order Dated March 30, 2021 [Doc. No. 358], the claim of The Small Business Administration is completely unsecured | Impaired | Treated completely as unsecured deficiency claim in Class ~~8~~9<br><br>On the Effective Date of the Amended Plan, the Small Business Administration's liens and claims in and upon the Debtor's assets will be released and extinguished. | Yes |

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---|---|---|---|---|---|
| 7 | Creditor Name: Nissan Motor Acceptance Corp.<br><br>Allowed Secured Amt.: $14,290.94<br><br>Collateral description: 2018 Nissan NV200, VIN# 3N6CM0KN4JK694810<br><br>Priority of lien: First<br><br>Value of Interest in Collateral: $13,950 | N | Impaired | In full and final satisfaction of Nissan Motor Acceptance Corporation's claim, the collateral securing Nissan Motor Acceptance Corporation's claim will be forfeited and turned over to Nissan Motor Acceptance Corporation on or after the Effective Date of the Amended Plan. The deficiency amount of $340.94 shall be treated as an unsecured claim in Class 89. | Yes |

### 2.2.2  Priority Unsecured Claims

Certain priority Claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Amended Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. A list of holders of priority claims who have either been scheduled by the Debtor or who filed a proof of claim is attached hereto and marked as Exhibit 1.

The following table lists the classes of Debtor's Priority Unsecured Claims and their proposed treatment under the Amended Plan:

NONE.

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---|---|---|---|---|---|
| 8 | Emily Raden Shore | Anticipated dispute resolution through Rule 9010 | Impaired | The National Labor Relations Board filed proof of claim No. 52 in the Bankruptcy Case in the amount of | Yes |

[Formatted: Justified]

| | | | | |
|---|---|---|---|---|
| | | settlement | | $27,580.00 on behalf of Melissa Ciccocioppo, Emily Raden-Shore, Sharyn Sefton, and Abigail Rideout. The Debtor intends to file a Rule 9019 Motion whereby the claim of the NLRB will be compromised such that Emily Raden Shore will receive a Section 507(a)(4) Priority Claim in the amount of $2,391 to be paid in 36 equal monthly installments at 3% per annum, or $69.53/mo. | |

| 8 | Abigail Rideout | Anticipated dispute resolution through Rule 9010 settlement | Impaired | The National Labor Relations Board filed proof of claim No. 52 in the Bankruptcy Case in the amount of $27,580.00 on behalf of Melissa Ciccocioppo, Emily Raden-Shore, Sharyn Sefton, and Abigail Rideout. The Debtor intends to file a Rule 9019 Motion whereby the claim of the NLRB will be compromised such that Abigail Rideout will receive a Section 507(a)(4) Priority Claim in the amount of $952 to be paid in 36 equal monthly installments at 3% per annum, or $27.69/mo. Abigail Rideout will also receive an Unsecured Claim in the amount of $2,100 to be treated as a Class 9 Allowed General Unsecured Claim. | Yes |
| 8 | Melissa Ciccocioppo | Anticipated dispute resolution through Rule 9010 settlement | Impaired | The National Labor Relations Board filed proof of claim No. 52 in the Bankruptcy Case in the amount of $27,580.00 on behalf of Melissa Ciccocioppo, Emily Raden-Shore, Sharyn Sefton, and Abigail Rideout. The Debtor intends to file a Rule 9019 Motion whereby the claim of the NLRB will be compromised | Yes |

| | | | | such that Melissa Ciccocioppo will receive a Section 507(a)(4) Priority Claim in the amount of $2,412 to be paid in 36 equal monthly installments at 3% per annum, or $70.14/mo. Melissa Ciccocioppo will also receive an Unsecured Claim in the amount of $3,200 to be treated as a Class 9 Allowed General Unsecured Claim. | |
| 8 | Sharyn Sefton | Anticipated dispute resolution through Rule 9010 settlement | Impaired | The National Labor Relations Board filed proof of claim No. 52 in the Bankruptcy Case in the amount of $27,580.00 on behalf of Melissa Ciccocioppo, Emily Raden-Shore, Sharyn Sefton, and Abigail Rideout. The Debtor intends to file a Rule 9019 Motion whereby the claim of the NLRB will be compromised such that Sharyn Sefton will receive a Section 507(a)(4) Priority Claim in the amount of $4,246 to be paid in 36 equal monthly installments at 3% per annum, or $123.48/mo. Melissa Ciccocioppo will also receive an Unsecured Claim in the amount of $4,700 to be treated as a Class 9 Allowed General Unsecured | Yes |

| | | | Claim. | |
|---|---|---|---|---|

### 2.2.3   General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.  A list of holders of unsecured claims who have either been scheduled by the Debtor or who filed a proof of claim is attached hereto and marked as Exhibit 3.

Insert description of §1122(b) convenience class if applicable: None.

The following table lists the classes of the Debtor's General unsecured Claims and their proposed treatment under the Amended Plan:

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---|---|---|---|---|---|
| 89 | General Unsecured Creditors Listed in Exhibit 3 to the Amended Plan<br><br>Total Estimated Amount of Allowed General Unsecured Claims:<br>$ inclusive of deficiency unsecured claims of Class 3,926,948.584,5,6 and 7: $4,757,787.50[5] | The Debtor reserves the right to object to any Claim | Impaired | In full satisfaction of the Allowed General Unsecured Claims, holders of Allowed General Unsecured Claims will be paid their *pro-rata* share of the following annual distributions:<br><br>December 31, 2021 - $10,000<br><br>December 31, 2022 - $6050,000<br><br>December 31, 2023 - $80,000<br><br>MarchAugust 31, 2024 - $6050,000<br><br>Total Distribution $210190,000<br><br>Estimated Recovery: | Yes |

[5] This amount is an estimate only and does not include potential Allowed rejection damage claims from rejected leases.  Depending on the amount of rejection damages asserted and allowed, the amount of unsecured claims could increase.

| Class # | Description | Disputed (Y/N) | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---------|-------------|----------------|-----------------------|-----------|------------------|
|  |  |  |  | 5%2% to 4% (Depending on amount of rejection damage claims) |  |

**Formatted Table**
**Inserted Cells**

### 2.2.4   Equity Interest Holders

The following table lists the classes of Equity Interests and their proposed treatment under the Amended Plan:

| Class # | Description | Impaired / Unimpaired | Treatment | Entitled to Vote |
|---------|-------------|-----------------------|-----------|------------------|
| 910 | Ed Wethli - 59.93% Voting Common Stock

Marcie Wethli - 9.175% Non-Voting Stock

Nicholas Redondo – 3.434% Non-Voting Stock

Timothy Albinese – 20.60% Non-Voting Stock

Timothy Burgan – 6.867% Non-Voting Stock | Unimpaired | Upon the Effective Date of the Amended Plan, Ed Wethli, Marcie Wethli, Nicholas Redondo, Timothy Albinese and Timothy Burgan will retain their respective ownership interests in the Debtor in the same amounts and in the same voting class as existed on the Effective Date of the Amended Plan. | No.  Deemed to have accepted the Amended Plan Pursuant to Section 1126(f) of the Bankruptcy Code |

**Inserted Cells**
**Formatted Table**

### 2.3   Claims Objections

The Debtor may object to the amount or validity of any claimClaim within forty-five (45) days following entry of the Post-Confirmation Order (unless otherwise modified or extended by Court Order) by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Amended Plan.  No payment will be made to a holder of a Disputed Claim unless and until it becomes an Allowed Claim.  To the extent the Disputed Claim becomes an Allowed Claim, the Debtor will pay the Allowed Claim in accordance with the Amended Plan.

### 2.4   Treatment of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains

for both the Debtor and another party to the contract.  The defined term "Executory Contract" as used in this Amended Plan includes unexpired leases.

The Executory Contracts to be assumed by the Debtor and performed by the Debtor after confirmation are set forth on **Schedule 2.4(a)** attached hereto.  Schedule 2.4(a) provides the name of the counterparty to the Executory Contract, a brief description of the contract, and the proposed cure amount.

On April 30, 2021, the Debtor filed its Second Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Doc. No. 448].  On May 13, 2021, the Debtor filed an amended exhibit to the Second Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Doc. No. 489] to include the leases for the Debtor's Squirrel Hill and Pittsburgh Cultural Trust Crazy Mocha locations.

On May 26, 2021, the Bankruptcy Court entered an order granting the Debtor's Second Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) (the "**Order Approving Assumption and Assignment**"). The Executory Contracts to be assumed by the Debtor and assigned to a third party pursuant to that Order Approving Assumption and Assignment are set forth on **Schedule 2.4(b)** attached hereto.  Schedule 2.4(b) provides the name of the counterparty to the Executory Contract, a brief description of the contract, the name of the proposed assignee and the proposed cure amount.

On February 18April 26, 2021, the Debtor filed its First Omnibus Motion Authorizing the Debtor to Assume and Assignto Reject Certain Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Dk. 281].  Pursuant(a), *Nunc Pro Tunc*, to a NoticeDate of Zoom Hearing and Response Deadline Regarding the First OmnibusFiling Motion Authorizing the Debtor[Doc. No. 421], seeking authority to Assume and Assign Unexpired Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) [Dk. 282], objections to the assumption and assignment of the Unexpired Leases, including  the proposed cure amount, or the adequacy of assurance of future performance, must be filed with the Court reject those Executory Contracts listed on or before **March 8**Exhibit A to the motion.

On May 28, 2021, andthe Bankruptcy Court entered a Zoom hearing on consideration ofmodified order granting the Debtor's First Omnibus Motion Authorizing the Debtor to Assume and Assign Unexpired to Reject Certain Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. §365(a), *Nunc Pro Tunc*, to Date of Filing Motion [Doc. No. 539] (the "**Order Approving Rejection of Leases**"). The Executory Contracts rejected by the Debtor pursuant to the Order Approving Rejection of Leases Pursuant to 11 U.S.C. §365 of the Bankruptcy Code and F.R.B.P. Rule 6006(A), (C), (E) and (F) has beenare set for **March 23**forth on the attached **Schedule 2.4(c)**.  Schedule 2.4(c) provides the name of the counterparty to the Executory Contract and the date of rejection became effective.

**Formatted:** Font: Not Bold

On June 11, 2021, at 2:00 p.m. (Eastern Prevailing Time), the Bankruptcy Court entered an order approving a stipulation by and between the Debtor, First Commonwealth Bank and North Suburban Land Company, Inc. [Doc. No. 559] (the "**North Suburban Order**") whereby for and in consideration of the payment of $21,000 by the Debtor to North Suburban Land Company, Inc. (the "**North Suburban Rent Payment**"), the Debtor is permitted to remain in possession of its Cranberry facility (leased by North Suburban Land Company, Inc. to the Debtor, the "**Cranberry Lease**") until August 31, 2021.  Also, pursuant to the North Suburban Order, the Cranberry Lease is deemed rejected as of September 1, 2021.

AllWith the exception of the Cranberry Lease, all Executory Contracts not listed on Schedule 2.4(a) or 2.4(b) shall be deemed rejected upon entry of the Confirmation Order and the Debtor will no longer continue to perform its obligations under the Executory Contract.  For the convenience of creditors, the Debtor has prepared the attached **Schedule 2.4(c)** listing Executory Contracts that have already been rejected by the Order Approving Rejection of Leases or to be rejected upon entry of the Confirmation Order.  For the avoidance of doubt, however, any Executory Contract not listed on either Schedule 2.4(a) or 2.4(b) will be conclusively deemed rejected even if not expressly shown on Schedule 2.4(c).

The deadline for filing a proof of claim arising from rejection of an Executory Contract shall be [the earlier of: (i) thirty (30)] days following entry earlier of: (a) the Confirmation Order; or (b)ii) thirty (30) days from entry of any Order of Court specifically providing for the rejection of the applicable Executory Contract.  Any Claim based on the rejection of an Executory Contract that is not timely filed shall be a Disputed Claim.

**2.5**    **Means for Implementation of the Amended Plan and Amended Plan Funding**

**2.5.1**    Describe how the Amended Plan will be implemented, including how the Amended Plan will be funded.

The Amended Plan will be funded, *in part* by: (i) the $1,500650,000 in sale proceeds Sale Proceeds from the sale of the Crazy Mocha Business; (ii) approximately $191,000 of funds obtained from the Employee Retention Credit (the "**ERC**"); (iii) $75,000 of exit financing obtained by the Debtor and (iiexplained further below in Article 2.5.3 (the "**Exit Financing**"); (iv) the $75,000 forfeited deposit on the failed Ablak sale; and (v) the operating income from the Debtor's continued operation of the Kiva Han Business.

The sale proceeds will be used to paySale Proceeds were used to fund: (i) the $200,000 distribution to First Commonwealth Bank on account of its Allowed Class 3 Secured Claim; (ii) $191,733.15 in cure costs associated with the assumption and assignment of Unexpired Leases/Executory Contracts, pay normal and customary closing costs and pay pursuant to the Order Approving Assumption and Assignment; and (iii) the North Suburban Rent Payment, leaving a balance held by the Debtor's Counsel in its IOLTA Trust account in the amount of $237,236.85 (the "**Net Sale Proceeds**").  The Net Sale Proceeds, the ERC, the forfeited deposit and the Exit Financing will be used to fund certain of the remaining Administrative Claims.  The Net Sale Proceeds will fund the distribution to

the holder of Class 3 Allowed Secured Claims,

The income generated from the Debtor's operation of the Kiva Han Business (*see* Schedule 3.2) will serve as the funding source for distribution to: (i) holders of Allowed Secured Claims in Class 1 and 3; (ii) certain other Administrative Claims; (iii) holders of Allowed Priority Tax Claims; and (iv) holders of Allowed Priority Claims in Class 8; and (v) holders of Allowed General Unsecured Claims in Class 89.

**2.5.2**   If the Amended Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures.

TheAs described in more detail in Article 1.9.1 above, the Debtor determined that the best course of action in this Bankruptcy Case is to sell all assets used in connection with the Crazy Mocha Business and reorganize the Kiva Han Business. On January 8, 2021, the Debtor and Ablak executed a Letter of Intent contemplating the sale and purchase of substantially all of the assets used in connection with the Debtor's operation of the Crazy Mocha coffee shops for the purchase price of 1,500,000.00. Subsequently, Ablak and the Debtor entered into the Stalking Horse APA dated February 4, 2021 for a purchase price of $1,500,000.00. To that end, the Debtor obtained the Sale Order resulting in the Debtor realizing $650,000 in Sale Proceeds from the sale of certain of its Crazy Mocha Business assets.

On February 12, 2021, the Debtor filed the Expedited Motion to Approve: (I) the Bid Procedures; (II) Break-UP Fee; and (III) Notice of Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004, and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 255], which was granted on February 18, 2021 [Doc. No. 279].

On February 12, 2021, the Debtor filed the Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 272]. Objections to the sale must be filed with the Court on or before **March 16, 2021**, and a Zoom hearing on consideration of the Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3has been set for **March 23, 2021, at 2:00 p.m.** (Eastern Prevailing Time).

**2.5.3**   Describe any postpetition or exit financing the Debtor has or will obtain to fund the Amended Plan.

None.

32

Marie W. Garesche, an individual, has agreed to loan the Debtor on the Effective Date $75,000, in immediately available funds, through a Demand Promissory Note, together with interest at a fixed rate of four (4%) percent per annum, compounded monthly, until the Demand Promissory Note is paid in full together with all interest accrued thereon.

Interest shall be calculated based on the outstanding principal based on a 360-day year but shall be charged for the actual number of days elapsed.

Debtor shall pay the principal and interest of the obligation evidenced by the Demand Promissory Note and all other amounts due thereunder **ON DEMAND** no sooner than thirty (30) days following the third (3rd) anniversary of the Demand Promissory Note.

A draft of the Promissory Demand Note is attached to the Amended Plan as Exhibit 4 and is subject to modification.  The Debtor will file a final draft of the Promissory Demand Note as an Amended Plan Supplement within fourteen (14) days of the Confirmation Hearing.

**Marie W. Garesche is an acquittance of Ed Wethli, and a current client of Leech Tishman Fuscaldo & Lampl, LLC, Debtor's counsel.  However, Leech Tishman has not and will not be representing Marie Garesche in any matters relating to the Debtor's Bankruptcy Case, including matters relating to the Demand Promissory Note.**

**2.5.4**   Describe Additional provisions, if any, for implementing the ~~plan~~Amended Plan, including provisions necessary to comply with §1191(c)(3)(B).

None.

~~None.~~

## 2.6    Payments

The Debtor shall make Amended Plan payments if the Amended Plan is confirmed under Section 1191(a) of the Bankruptcy Code.  Pursuant to Section 1194(a) of the Bankruptcy Code, to the extent any payments and funds were received by the Trustee prior to confirmation, the Trustee shall distribute any such payments in accordance with the Amended Plan.

If the Amended Plan is confirmed under~~-~~ §1191(b), the Debtor intends to make all Amended Plan payments to creditors under the Amended Plan, unless the order confirming the Amended Plan requires the Trustee to make all Amended Plan payments.

Payments made pursuant to the Amended Plan that are unclaimed after six (6) months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address.  Provided that the Amended Plan distribution was sent to the claimant's last known address on the claims register,

33

unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor or the entity acquiring the assets of the Debtor under the Amended Plan (as applicable).

**2.7    Termination of Trustee Services**

If the Amended Plan is confirmed under §1191(a), the service of the Trustee shall terminate when the Amended Plan has been substantially consummated (within the meaning of, and except as otherwise provided in §1183(c)(1)).  If the payments contemplated by the Amended Plan are made, the Debtor believes substantial consummation of the Amended Plan will occur on the closing date on the sale of the Crazy Mocha Business.  Not later than 14 days after substantial consummation, the Debtor will file and serve, in accordance with §1183(c)(2), a notice that the Amended Plan is substantially consummated.

**2.8    Post-Confirmation Management**

The Debtor's management immediately prior to the Effective Date shall serve as the Debtor's management on and after the Effective Date.  Upon entry of the Confirmation Order, officers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Annual Compensation |
|------|----------|---------------------|
| Ed Wethli | Consultant | 2021 - $~~84,000~~80,700<br>2022 - $~~86,520~~83,121<br>2023 - $~~89,115.60~~85,614.63<br>1st, 2nd, 3rd Qt. 2024 - |
| Kim Garrett | Chief Executive Officer | 2021 - $~~94,640~~91,340<br>2022 - $~~97,479~~94,080.20<br>2023 - $~~100,403.58~~96,902.61<br>1st, 2nd, 3rd Qt. 2024 - |
| T/B/D | Account Manager | 2021 - $~~60,000~~56,700<br>2022 - $~~60,000~~58,401<br>2023 - $60,~~000~~153.03<br>1st, 2nd, 3rd Qt. 2024 - |

**2.9    Tax Consequences of the Amended Plan**

*The Debtor makes no representation regarding the tax consequences of the Amended Plan to any Creditor or Equity Interest Holder. Creditors and Equity Interest Holders concerned with how the Amended Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

**ARTICLE 3**

### FEASIBILITY OF
### AMENDED PLAN

**3.1     Ability to Initially Fund Amended Plan**

The Net Sale Proceeds from the sale of the Crazy Mocha Business, ERC, forfeited deposit, Exit Financing and the Debtor's financial projections for the continued operation of the Kiva Han Business demonstrate sufficient cash on hand to satisfy obligations due on the Effective Date of the Amended Plan, including payment of the Allowed Administrative Claims, U.S.Subchapter V Trustee Feesfees, and cureother amounts due on the Effective Date, in accordance with the Bankruptcy Code or as otherwise agreed.  *See* Schedules 3.1 and 3.2 attached hereto.

**3.2     Ability to Make Future Amended Plan Payments And Operate Without Further Reorganization**

Pursuant to §1190(2) of the Bankruptcy Code, the Debtor shall submit all or such portion of future income as is necessary for the confirmation of the Amended Plan and to satisfy the Debtor's obligations under Article 2 of the Amended Plan.

Attached hereto as **Schedule 3.2**, are the Debtor's financial projections for the continued operation of the Kiva Han Business demonstrating the Debtor's ability to make all future Amended Plan payments in the aggregate amount of $375410,000 during the Amended Plan term (the "**Amended** Plan Funding").  In the event this Amended Plan is confirmed pursuant to the cram down provisions of §1191(b), Amended Plan Funding is in an amount equal to the Debtor's disposable income as defined in §1191(d) of the Bankruptcy Code.

Summarize the numerical projections, and highlight/explain why any assumptions are not in accord with past experience should now be made:

The Debtor is sellingold certain of the Crazy Mocha Business assets soand closed the reaming Crazy Mocha stores.  As a result, the Debtor's income and expenses will drastically change from the budget initially provided in the Bankruptcy Case.  The Debtor will continue to operate the Kiva HahnHan Business.  The projections attached reflect the income and expenses of continued operations of the Kiva Hahn Business. Han Business.  Further, the Debtor continues to operate the Kiva Han Business and is in negotiations with certain Chinese persons and entities to attempt to expand the Kiva Han and Crazy Mocha brand, product, revenue and business in China.

As demonstrated by the Kiva Han projections and line-item expenses, including the payments required under this Amended Plan, the Debtor will generate sufficient income and resulting cash flow in order to make the payments as set forth in the Amended Plan.

The final Amended Plan payment is expected to be paid on MarchAugust 31, 2024.

**You Should Consult with Your Accountant or other Financial Advisor
If You Have Any Questions Pertaining to the Debtor's Financial Projections.**

**ARTICLE 4**

**LIQUIDATION ANALYSIS**

**4.1**    **Comparison of Amended Plan with Chapter 7 Liquidation**

In order to confirm the Amended Plan, the Bankruptcy Court must find that holders of Allowed Claims and Equity Interests who do not accept the Amended Plan will receive at least as much under the Amended Plan as such holders would receive in a Chapter 7 liquidation of the Debtor's assets (the "**Liquidation Test**").

If the Debtor's proposed Amended Plan is not confirmed, the potential alternatives would include dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate all the Debtor's non-exempt assets. In this event, all Secured Claims (to the value of the collateral) all Priority Unsecured Claims and all Administrative Claims (both Chapter 7 and Chapter 11) must be paid in full before any distribution is made to holders of General Unsecured Claims.

**4.2**    **Liquidation Analysis**

Based upon the liquidation value of the Debtor's assets in Amended Plan Section 1.4 and the amount of claims set forth in Amended Plan Section 1.5, the Debtor's Amended Plan passes the Liquidation Test.

| VALUE OF CHAPTER 7 ESTATE<br>(NET OF SECURED CLAIMS AND EXEMPTIONS) | | |
|---|---|---|
| Value of Estate's Interests in Assets | $~~29,614.32~~36,270.90 [6] | |
| **Minus** | | |
| • Estimated Chapter 7 expenses (calc. at 8% of the Total Value All Assets): | $~~61,032~~ | $  (65,904.28) |
| • Amount of Administrative Claims | $~~511,013.84~~ | $  (671,823.08) |
| • Amount of Priority Tax Claims | $~~28,277~~ | $  (27,964.49) |

---

[6] This number should be the same as the Total Value of the Estate's Interest in Assets listed in Section 1.4 of the Amended Plan

36

- Amount of Priority Unsecured Claims    $~~0.00~~  $ (10,000)

**TOTAL Available For General Unsecured Claims in a Chapter 7 Liquidation**    **$0.00**

| AMOUNT OF GENERAL UNSECURED CLAIMS IN A CHAPTER 7 LIQUIDATION |
|---|

Class ~~8~~9 General Unsecured Claims Amount    $2,~~189,226.33~~338,064.91

**Plus**

- Undersecured portion of Secured Claims added to General Unsecured Claims due to Liquidation    $1,~~737~~2,419,722.~~25~~59

**TOTAL Amount of General Unsecured Claims in a Chapter 7 liquidation**    $~~3,926,948.58~~4,757,787.50[7]

**Percentage Distribution to Holders of General Unsecured Claims in a Chapter 7 Liquidation**    **0.00 %[8]**

The Amended Plan passes the Liquidation Test because the percentage distribution to holders of General Unsecured Claims under the Amended Plan is projected to be ~~52% to 4~~%, whereas such Creditors are projected to receive 0% in a hypothetical chapter 7 liquidation.

Accordingly, under the hypothetical Chapter 7 liquidation, although secured creditors will be paid in partial satisfaction of their Allowed Secured Claims, holders of Allowed General Unsecured Claims will receive less favorable treatment than what is proposed under the Amended Plan.

**ARTICLE 5**

---

[7] This amount is an estimate only and does not include potential Allowed rejection damage claims from rejected leases. Depending on the amount of rejection damages asserted and allowed, the amount of unsecured claims could increase.

[8] *Divide Total Amount of General Unsecured Claims in the hypothetical liquidation by the total amount available to pay General Unsecured Claims in a hypothetical liquidation*

**DISCHARGE**

**5.1    Discharge**

**Discharge.**  Except as otherwise provided in this Amended Plan, if this Amended Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Amended Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

Except as otherwise provided in this Amended Plan, if the Amended Plan is confirmed under § 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Debtor of all payments due under the Amended Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in §1141(d)(1)(A) of this title, and all other debts allowed under §503 of this title and provided for in this Amended Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the ~~plan~~Amended Plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in §523(a) of this title.

**ARTICLE 6**

**GENERAL PROVISIONS**

**6.1    Title to Assets**

Pursuant to Section 1141(b) and (c) of the Bankruptcy Code, if this Amended Plan is confirmed under Section 1191(a) of the Bankruptcy Code, except as otherwise provided in the Amended Plan or in the Confirmation Order, (i) confirmation of the Amended Plan vests all of the property of the estate in the Debtor, and (ii) after Amended Plan Confirmation, the property dealt with by the Amended Plan is free and clear of all Claims and interests of creditors, equity security holders and Equity Interests.

If the Amended Plan is confirmed under §1191(b), except as otherwise provided in the Amended Plan or in the Confirmation Order, after all Amended Plan payments are made: (i) the Amended Plan vests all of the property of the estate in the Debtor; and (ii) the property dealt with by the Amended Plan is free and clear of all Claims and interests of creditors, equity security holders and Equity Interests free and clear of all Claims and Equity Interests.

**6.2    Binding Effect**

Pursuant to Section 1141(a) of the Bankruptcy Code, if this Amended Plan is confirmed under Section 1191 of the Bankruptcy Code, the provisions of a confirmed plan bind the debtor,

any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, Equity Interests or general partner has accepted the plan.

**6.3**     **Severability**

If any provision in this Amended Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Amended Plan.

**6.4**     **Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Amended Plan and to resolve any disputes arising from implementation of the Amended Plan; (ii) to rule on any modification of the Amended Plan proposed under §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of exectory contracts or unexpired leases; (v) to adjudicate any ~~cause~~claims and/or causes of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action and claims or causes of action against Ablak; (vi) to resolve any dispute in and relating to the sale of the Crazy Mocha Business and/or ~~order approving the sale~~Sale Order; and (vii) to direct the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Amended Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Amended Plan.

**6.5**     **Captions**

The headings contained in this Amended Plan are for convenience of reference only and do not affect the meaning or interpretation of this Amended Plan.

**6.6**     **Modification of Amended Plan**

The Debtor may modify the Amended Plan at any time before confirmation of the Amended Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Amended Plan.

If the Amended Plan is confirmed under §1191(a), the Debtor may also seek to modify the Amended Plan at any time after Confirmation only if (1) the Amended Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Amended Plan is confirmed under §1191(b), the Debtor may seek to modify the Amended Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7    Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Amended Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Amended Plan. Where applicable, the definitions that follow that are found in the Bankruptcy Code are for convenience of reference only and are superseded by the definitions found in the Bankruptcy Code.

**7.1    Ablak**: Ablak Holdings, LLC.

**7.2    Ablak APA**: Shall have the meaning given to it in Article 1.9.1.

**7.3    Ablak Bid Procedures Order**: The Order Approving Bid Procedures, Break-up Fee, and Notice of Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. 363, F.R.B.P. Nos. 2002 and 6004, and W.Pa.LBR 6004-1 and 9013-3 dated February 18, 2021 [Doc. No. 279].

**7.4    Ablak Sale Motion**: Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Puruant to 11 U.S.C. 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 272]

**7.5    Ablak Stalking Horse APA**: The Asset Purchase Agreement dated February 4, 2021by and between the Debtor and Ablak Holdings, LLC, whereby the Debtor agreed to sell substantially all of the assets of the Crazy Mocha Business to Ablak Holdings, LLC for a purchase price of $1,500,000.00.

**7.6    Additional Payments**: Shall have the meaning given to it in Article 1.9.1.

**7.2 7.7    Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case

40

entitled to priority under §507(a)(2) of the Bankruptcy Code and allowed under §503(b) of the Bankruptcy Code.

**7.8**     **Amended Plan**: This Amended Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**7.9**     **Amended Plan Funding**: Shall have the meaning given to it in Article 3.2.

**7.10**    **Amended Plan Supplement**: Shall mean the final Demand Promissory Note by and between the Debtor and Marie W. Garesche.

**7.11**    **Amended Purchase Price**:  Shall mean $650,000.

**7.12**    **Amended Stalking Horse APA**: Shall have the meaning given to it in Article 1.9.1.

**7.37.13** **Allowed:** With respect to a Claim or Equity Interest means any claim against or equity interest in the Debtor pursuant to §502 of the Bankruptcy Code to the extent that: (a) the Debtor schedules such Claim as an undisputed, non-contingent and liquidated Claim, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and, as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.47.14** **Avoidance Actions**:  All causes of actions, suits, choses in action, and claims of the Debtor and/or the Debtor's estate against any entity or person seeking to avoid a transfer of property, recovery of property and subordination or other actions or remedies that may be brought on behalf of the Debtor or the Debtor's estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**7.57.15** **Bankruptcy Case:** The Debtor's bankruptcy case filed at the above-referenced case number.

**7.67.16** **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**7.77.17** **Bankruptcy Court:** The United States Bankruptcy Court for the Western District of Pennsylvania.

**7.87.18** **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**7.19**    **Buyer**: Shall mean Pamela VonBergen, now by assignment, Crazh Mocha, LLC.

**7.97.1** **Bid Procedures Order:** The Order Approving Bid Procedures, Break-up Fee, and Notice of Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. 363, F.R.B.P. Nos. 2002 and 6004, and W.Pa.LBR 6004-1 and 9013-3 dated February 18, 2021

[Doc. No. 279].

Formatted: Font: Not Bold

7.107.20    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

7.117.21    **Chapter 11 Case**: This case under Chapter 11 of the Bankruptcy Code in which is the Debtor-in-Possession.

7.127.22    **Claim**: Any claim as defined in §101(5) of the Bankruptcy Code.

7.137.23    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

7.24    **Closing**: Shall mean the closing on the sale to Buyer pursuant to the Sale Order and Amended Stalking Horse APA held on May 28, 2021.

7.147.25    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Amended Plan.

7.157.26    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Amended Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

7.167.27    **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Amended Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

7.28    **Cranberry Lease**: Shall have the meaning given to it in Article 2.4

7.29    **Crazy Mocha**:  Shall mean Crazy Mocha, LLC.

7.177.30    **Crazy Mocha Business:** The Debtor's operation of a chain of coffee shops throughout Allegheny, Beaver, and Westmoreland Counties in Pennsylvania whereby the Debtor offered customers a variety of offer and other specialty drinks, along with pastries, snacks, and related food items.

7.187.31    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

7.197.32    **Debtor**: Ed's Beans, Inc. d/b/a Crazy Mocha, Crazy Mocha Coffee, Crazy Mocha Coffee Company, Kiva Han, Kiva Han Coffee, KH, and KHC], the debtor-in-possession

in this Chapter 11 Case.

7.207.33        **Disputed Claim:** Any claim against the Debtor pursuant to §502 of the Bankruptcy Code that the Debtor or any party in interest has in any way objected to, challenged or otherwise disputed.

7.217.34        **Effective Date**: The date on which the Amended Plan shall become effective.

7.227.35        **Equity Interest**: An ownership interest in the Debtor.

7.36        **ERC**: Shall have the meaning given to it in Article 2.5.1.

7.237.37        **Excluded Assets:** Those assets listed as excluded assets under the Amended Stalking Horse APA, or such other Successful Bidder APA (as that term is defined in the Sale Motion and/or Sale Order), as the case may be.

7.247.38        **Excluded Business Line:** All assets used in connection with the Kiva Han Business, coffee bean roasting, wholesale distribution of coffee beans and related products and equipment, and the online sales of Crazy Mocha branded coffee.

7.257.39        **Executory Contracts**: All unexpired leases and executory contracts as described in §365 of the Bankruptcy Code.

7.40        **Exit Financing**: Shall have the meaning given to it under Article 2.5.1.

7.267.41        **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

7.277.42        **General Unsecured Claim:** Any Claim in the Chapter 11 case which is not a Secured Claim, Priority Tax Claim, or Priority Unsecured Claim.

7.287.43        **Insider:** The relationship between the Debtor and other persons defined at §101(31) of the Bankruptcy Code.

7.297.44        **Kiva Han Business:** The Debtor's business of operating Kiva Han Coffee, a roaster and wholesale of coffee beans and various products, including tea, specialty drinks, café supplies, and equipment.

7.30    **Motion for Sale:** Motion for Order Authorizing and Approving the Sale of Substantially all of the Crazy Mocha Assets Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. 363 and F.R.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 [Doc. No. 272].

43

**7.45**     **Liquidation Test Analysis**: Shall have the meaning given to it under Article 4.1.

**7.46**     **Net Sale Proceeds:** Shall have the meaning given to it under Article 2.5.1.

**7.47**     **North Suburban Order**: Shall have the meaning given to it under Article 2.4.

**7.48**     **North Suburban Rent Payment**: Shall have the meaning given to it under Article 2.4.

**7.49**     **Order Approving Assumption and Assignment:** Shall have the meaning given to it under Article 2.4.

**7.50**     **Order Approving Rejection of Leases**: Shall have the meaning given to it under Article 2.4.

**7.31~~7.51~~**     **Original Plan**:  Shall mean the ~~Sale Proceeds, LESS (i) Cure Costs estimated at $380,847.34.~~Subchapter V- Small Business Debtor's Chapter ~~V Trustee fees estimated at $8,000 and $175,000 for professional fee administrative claims.~~ 11 Plan of Reorganization Dated as of February 25, 2021, [Doc. No. 298]

**7.32~~7.52~~**     **Petition Date**: On October 19, 2020, the date the Chapter 11 petition for relief was filed.

**7.33**     ~~**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.~~

**7.34~~7.53~~**     **Post-Confirmation Order**:  The Post-Confirmation Order and Notice of Deadlines entered by the Bankruptcy Court following Amended Plan Confirmation providing, among other things, the deadlines by which certain post-Confirmation actions must be taken.

**7.35~~7.54~~**     **Priority Unsecured Claim**: Any Claim entitled to priority in payment under §507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

**7.36~~7.55~~**     **Priority Tax Claim**: Any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**7.37~~7.56~~**     **Purchased Assets:** Shall be those assets ~~being~~ sold by the Debtor and purchased by the Buyer pursuant to the Amended Stalking Horse APA.

**7.38**     ~~**Sale Motion:**~~ Shall mean the Motion for Order Authorizing and Approving: (I) the Sale of Certain Crazy Mocha Assets Free and Clear of all Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. ~~Sale Motion: Shall have the meaning ascribed to it in Article 1.9.1.~~

**7.57**     2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 and (II) Certain Bid Procedures [Doc.

No. 440] filed by the Debtor on April 29, 2021.

7.58    **Sale Order**: Shall mean the order entered by the Bankruptcy Court on May 26, 2021, Authorizing and Approving: (I) the Sale of Certain Crazy Mocha Assets Free and Clear of all Liens, Claims, Encumbrances, Interests, and Liabilities Pursuant to 11 U.S.C. § 363 and F.R.B.P. Nos. 2002 and 6004 and W.Pa.LBR 6004-1 and 9013-3 and (II) Certain Bid Procedures [Doc. No. 530], approving the sale to Buyer pursuant to the Amended Stalking Horse APA.

7.39**7.59**    **Sale Proceeds:**  $1,500Shall mean $650,000 as contemplated by the Amended Stalking Horse APA, or such other amount as contemplated by a Successful Bidder APA (as that term is defined in the Sale Motion and/or Sale Order).

7.40**7.60**    **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing assets and assets.

7.41**7.61**    **Secured Claim:** A Claim that is secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code.

7.42    **Stalking Horse APA: The** Asset Purchase Agreement dated February 4, 2021by and between the Debtor and Ablak Holdings, LLC, whereby the Debtor agreed to sell substantially all of the assets of the Crazy Mocha Business to Ablak Holdings, LLC for a purchase price of $1,500,000.00.

7.43**7.62**    **Trustee**:  William G. Krieger, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Amended Plan, or the order confirming the Amended Plan.

7.44**7.63**    **Value of the Estate's Interest in Assets**:  As to any asset of the Debtor, the value of the estate's interest in an asset is calculated by subtracting from the Liquidation Value listed for the asset in Amended Plan Section 1.4: (a) the amount of the Allowed Secured Claims having a security interest in the asset; and (b) the amount of any claimed exemption applicable to the asset.  The Value of the Estate's Interest is calculated for purposes of the Liquidation Test in Article 4 of this Amended Plan, only, and for no other purpose.

7.64    **VonBergen**: Shall mean Pamela VonBergen.

## ARTICLE 8

## EXHIBITS, SCHEDULES AND CHARTS

The following checked documents either accompany the Amended Plan or are included within the Amended Plan

45

| | | |
|---|---|---|
| [x] | Debtor's Assets at Fair Market Value | Article 1, Section 1.4 |
| [x] | Debtor's Liabilities, listed by Class | Article 1, Section 1.5; *see also* Article 2, Sections 2.1 and 2.2 |
| [x] | Executory Contracts and Unexpired Leases to be Assumed | Schedule 2.4(a) |
| [x] | Executory Contracts and Unexpired Leases to be Assumed and Assigned | Schedule 2.4(b) |
| [x] | Executory Contracts and Unexpired Leases to be Rejected | Schedule 2.4(c) |
| [x] | Sources and Uses of Cash to Fund the Amended Plan | Article 3.1 and Schedule 3.1 |
| [x] | Financial forecast for the Debtor | Article 3.2 and Schedule 3.2 |
| [x] | Liquidation Analysis | Article 4 |

Respectfully submitted,

By: */s/ John M. Steiner*
      John M. Steiner (Pa. ID No. 79390)
      Crystal Thornton-Illar (Pa. ID No. 93003)
      525 William Penn Place, 28th Floor
      Pittsburgh, PA  15219
      (412) 261-1600 (Phone)
      (412) 227-5551 (Fax)
      jsteiner@leechtishman.com
      cthornton-illar@leechtishman.com

      *Counsel for the Debtor, Ed's Beans, Inc*

**SCHEDULE 2.4(a)**

**Executory Contracts and Unexpired Leases to be Assumed.**

| Counterparty Name and Address | Contract or Lead Description | Cure Amount | Proposed Adequate Assurance of Future Performance |
|---|---|---|---|
| Ally Financial<br>PO Box 130424<br>Roseville, MN 55113-0004 | Retail Installment Sale Contract dated February 25, 2015, for the purchase of 2015 Chevrolet Express G250;<br>VIN#1GCWGGCF8F11116709 | $0.00 | Income generated for the Debtor's continued operation of the Kiva Han Business |
| Honda Financial Services | Lease of 2018 Honda Accord Sedan,<br>VIN#1HGCV1F96JA130288 | $0.00 | Income generated for the Debtor's continued operation of the Kiva Han Business |

**SCHEDULE 2.4(b)**

**Executory Contracts and Unexpired Leases to be Assumed and Assigned.**

| Counter-party name and address | Lease Description | ~~Proposed~~ Cure Amount ~~(Includes Pre and Post Petition Default Amounts)~~ | ~~Proposed Adequate Assurance of Future Performance~~ Assignee |
|---|---|---|---|
| ~~425 Sixth Avenue Associates Unit B Master Tenant, c/o PMC Property Group, Inc. 1608 Walnut Street, Ste. 1400 Philadelphia, PA 19103~~ | ~~Store 21 (Alcoa Building) – Regional Enterprise Tower, 425 Sixth Avenue, Pittsburgh, PA 15219~~ | ~~$12,039.81~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| Aaron Fox Trust c/o Bernard M. Fox~~,~~ Trustee ~~6465~~ 6456 Phillips Avenue ~~,~~ Pittsburgh, PA 15217 | Store 22 ~~(~~(Squirrel ~~Hill)~~ Hil) 2100-2102 Murray ~~Avenue~~ Ave, Pittsburgh, PA 15217 | $~~26,164.80~~33,421.88 | ~~Uninterrupted performance by Successful Bidder~~Crazy Mocha, LLC |
| ~~Baum Boulevard Investors, LP 507 Mortimer Avenue Sturgis, MI 49091~~ | ~~Store 32 (Baum Boulevard) – 5607 Baum Boulevard, Pittsburgh, PA 15206~~ | ~~$27,940.00~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| ~~Brady Building, LLC P.O. Box 12636 Pittsburgh, PA 15241~~ | ~~Store 24 (Ross Street) – 225 Ross Street, Pittsburgh, PA 15219~~ | ~~$11,831.40~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| Carnegie Library of Pittsburgh 4400 Forbes Avenue Pittsburgh, PA 15213 | Store No. 4 (( Main Library) 4400 Forbes Avenue, Pittsburgh, PA 15213 | $~~23,~~500.00 | ~~Uninterrupted performance by Successful Bidder~~Crazy Mocha, LLC |
| ~~Brentwood Towne Square Assoc. 560 Epsilon Drive Pittsburgh, PA 15238~~ | ~~Store No. 36 (Brentwood Towne Square) 4100 Brownsville Road, Brentwood, PA 15227~~ | ~~$24,070.40~~ | ~~Uninterrupted performance by Successful Bidder~~ |

| | | | |
|---|---|---|---|
| Comprehensive Healthcare Management ~~Serv~~Services d/b/a Brighton Wellness and ~~Rehabilitati~~Rehabilitation 246 Friendship Circle Beaver, PA 15009 | Store ~~No.~~ 40. Lease of space in Lessor's facility at 246 Friendship Circle, Beaver, PA | $0.00 | ~~Uninterrupted performance by Successful Bidder~~Crazy Mocha, LLC |
| ~~Ellsworth Center Company~~ ~~5830 Ellsworth Avenue, Suite 300~~ ~~Pittsburgh, PA 15232~~ | ~~Store 1 (Shadyside) 5830 Ellsworth Avenue, Suite 100, Pittsburgh, PA 15232~~ | ~~$30,023.42~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| ~~Forrest City Bessimer Court Associates, LP~~ | ~~Store 30 (Station Square) — 5 Station Square Drive (Unit A-3), Pittsburgh, PA 15219~~ | ~~$37,984.50~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| Heritage Valley Health Systems Attn: Ilene Sabina 420 Rouser Road Suite 201 Coraopolis, PA 15108 | Stores 15 & 16 (Heritage Valley-Sewickley) – 720 Blackburn Road, Sewickley, PA 15143; (Heritage Valley-Beaver) – 1000 Dutch Ridge Road, Beaver, PA 15009 | $~~12,132~~16,176.00 | ~~Uninterrupted performance by Successful Bidder~~Crazy Mocha, LLC |
| ~~Hertz Gateway Center, LP~~ ~~Two Gateway Center 603 Stanwix Street, Suite 400 Pittsburgh, PA 15222~~ | ~~Store 9 and 27 (One Gateway Center) — One Gateway Center, Suite 185, Pittsburgh, PA 15222; (Four Gateway Center) — 444 Liberty Avenue, Pittsburgh, PA 15222~~ | ~~$26,139.75~~ | ~~Uninterrupted performance by Successful Bidder~~ |
| One Village Square, LLC Schenley Capital, Inc. 417 Walnut Street, | Store 37 (Sewickley) – 417 Walnut Street, Sewickley, PA 15143 | $~~18,448.81~~42,123.44 | ~~Uninterrupted performance by Successful Bidder~~Crazy Mocha, LLC |

Formatted Table

| | | | |
|---|---|---|---|
| Suite 200<br>Sewickley, PA 15143 | | | |
| Pittsburg SSW1 Note Owner, LLC<br>130 W 42nd Street<br>22nd Floor<br>New York, NY 10036 | Store 39 (Southside) — 2729 East Carson Street, Pittsburgh, PA 15203 | $20,832.76 | Uninterrupted performance by Successful Bidder |
| Port Authority of Allegheny County<br>345 Sixth Avenue<br>Pittsburgh, PA 15222 | Store 11 (Steel Plaza T-Station) – 500 Grant Street (T-Station), Pittsburgh, PA 15222 | $10,68013,227.00 | Uninterrupted performance by Successful BidderCrazy Mocha, LLC |
| Southpointe Town Center, L.P.<br>375 Southpointe Boulevard<br>Suite 410<br>Canonsburg, PA 15317 | Store 34 (Southpointe) — 1900 Main Street, Suite 115, Canonsburg, PA 15317 | $42,202.50 | Uninterrupted performance by Successful Bidder |
| The Bank of New York Mellon<br>Reed Smith LLP c/o Luke A. Sizemore<br>225 Fifth Avenue, Suite 1200<br>Pittsburgh, PA 15222 | Store 17 (One Mellon Center) – 500 Grant Street, Pittsburgh, PA 15219 | $10,675.0033,372.01 | Uninterrupted performance by Successful BidderCrazy Mocha, LLC |
| The Pittsburgh Trust for Cultural Resources<br>___803 Liberty Avenue<br>Pittsburgh, PA 15222 | Store 14 (Cultural Trust) — 801 Liberty Avenue, Pittsburgh, PA 15222 | $27,51039,659.00 | Uninterrupted performance by Successful BidderCrazy Mocha, LLC |
| University of Pittsburgh<br>Attn: Senior Vice Chancellor<br>124 Cathedral of Learning<br>Pittsburgh, PA 15260 | Store 3 (Oakland/University of Pittsburgh, 207 Oakland Ave., Pittsburgh, PA 15203 | $12,392.1910,253.82 | Uninterrupted performance by Successful BidderCrazy Mocha, LLC |
| UPMC East<br>Attn: UPMC Corporate Real Estate<br>US Steel Tower, 60th | Store 29 (UPMC-East) — 2775 Mosside Boulevard, | $16,720.00191,733.15 | Uninterrupted performance by Successful Bidder |

Formatted: Font: Bold

Formatted: Font: Bold

| | | | |
|---|---|---|---|
| Flr          Pittsburgh, PA 15219 | Monroeville, PA 15146 | | |
| William Barron P.O. 40371 Pittsburgh, PA 15201 | Store 2 (Bloomfield) 4525 Liberty Avenue, Pittsburgh PA 15224 | $10,560.00 | Uninterrupted performance by Successful Bidder |

**Formatted:** Font: Bold

**SCHEDULE 2.4(c)**

**Executory Contracts and Unexpired Leases to be Rejected**

| Counterparty Name & Address | Contract or Lease Description | Rejection Date |
|---|---|---|
| North Suburban Land Company | 2018 Lease of space in Thomson Business Park in Cranberry Township, PA | ~~Confirmation Date~~September 1, 2021 |
| DK Development, LLC, (Smithfield Location) | Commercial Lease dated May 4, 2015 for location on 309 Smithfield Street, Pittsburgh, PA | Confirmation Date |
| 225 Ross Street Associates, LP | 225 Ross Street Pittsburgh, PA 15219 | Monday, April 26, 2021 |
| 412 Working 2015 Mary Street Pittsburgh, PA 15203 | 309 Smithfield Street Pittsburgh, PA 15219 | Monday, April 26, 2021 |
| 425 Sixth Avenue Associates Unit B Master Tenant, c/o PMC Property Group, Inc. 1608 Walnut Street, Ste. 1400 Philadelphia, PA 19103 | Store 21 (Alcoa Building) – Regional Enterprise Tower, 425 Sixth Avenue, Pittsburgh, PA 15219 | Monday, April 26, 2021 |
| Baum Boulevard Investors, LP 507 Mortimer Avenue Sturgis, MI 49091 | Store 32 (Baum Boulevard) – 5607 Baum Boulevard, Pittsburgh, PA 15206 | Tuesday, April 27, 2021 |
| Brady Building, LLC P.O. Box 12636 Pittsburgh, PA 15241 | Store 24 (Ross Street) – 225 Ross Street, Pittsburgh, PA 15219 | Thursday, May 13, 2021 |
| Brentwood Towne Square Assoc. 560 Epsilon Drive Pittsburgh, PA 15238 | Store No. 36 (Brentwood Towne Square)- 4100 Brownsville Road, Brentwood, PA 15227 | Thursday, May 27, 2021 |
| Ellsworth Center Company 5830 Ellsworth Avenue, Suite 300 Pittsburgh, PA 15232 | Store 1 (Shadyside) 5830 Ellsworth Avenue, Suite 100, Pittsburgh, PA 15232 | Monday, April 26, 2021 |

| | | |
|---|---|---|
| Forrest City Bessimer Court Associates, LP | Store 30 (Station Square) – 5 Station Square Drive (Unit A-3), Pittsburgh, PA 15219 | Thursday, May 27, 2021 |
| Hertz Gateway Center, LP Two Gateway Center 603 Stanwix Street, Suite 400 Pittsburgh, PA 15222 | Store 9 and 27 (One Gateway Center) – One Gateway Center, Suite 185, Pittsburgh, PA 15222; (Four Gateway Center) – 444 Liberty Avenue, Pittsburgh, PA 15222 | Monday, April 26, 2021 |
| Pittsburg SSW1 Note Owner, LLC 130 W 42nd Street 22nd Floor New York, NY 10036 | Store 39 (Southside) – 2729 East Carson Street, Pittsburgh, PA 15203 | Thursday, May 27, 2021 |
| UPMC East Attn: UPMC Corporate Real Estate US Steel Tower, 60th Fl, Pittsburgh, PA 15219 | Store 29 (UPMC-East) – 2775 Mosside Boulevard, Monroeville, PA 15146 | Wednesday, May 26, 2021 |
| Southpointe Town Center, L.P. 375 Southpointe Boulevard Suite 410 Canonsburg, PA 15317 | Store 34 (Southpointe) – 1900 Main Street, Suite 115, Canonsburg, PA 15317 | Thursday, May 27, 2021 |
| William Barron P.O. 40371 Pittsburgh, PA 15201 | Store 2 (Bloomfield) 4525 Liberty Avnue, Pittsburgh PA 15224 | Monday, April 26, 2021 |

**Formatted:** Left

**SCHEDULE 3.1**

**Sources and Uses of Cash to Fund the Amended Plan**

The sources and Uses of the Cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| Current Bank Account Balance: | ~~$81,019.44~~ $47,000 |
| **Plus** | |
| Additional Cash Debtor anticipates will accumulate from net earnings between now and Effective Date[9] | ~~$20,000~~ $6,500 |
| Borrowing[10] | $ ~~n/a~~ $75,000 |
| Capital Contributions | $ ~~n/a~~ |
| Other (Net Sale Proceeds): | ~~$1,500,000~~ $237,236.85 |
| Other (ERC): | $191,000 |
| Other (Forfeited Deposit) | $75,000[11] |
| | |
| **Cash on hand on the Effective Date:** | **$631,766.85** |
| **Less** | |
| First Commonwealth Payment | $(100,000.00) |
| Administrative Claims paid on Effective Date (Prof. Fees and Admin. Rent & Taxes) | $(502,737.49) |
| Pre-Petition Cure Costs | |
| Statutory costs and charges, including Sub chapter V Trustee Fees | $(18,000.00) |
| | |
| **Balance after paying these amounts** | **$11,029.36** |

---

[9] The basis for these projections is set forth in Article 3 of the Amended Plan and Schedule 3.2.

[10] Details concerning any Borrowings used to the fund the Amended Plan are set forth in Article 2, Section 2.5.

[11] The continues to hold the $75,000 deposit on the failed Ablak sale. It is the Debtor's position that Ablak breached the Ablak APA, and therefore, has forfeited the deposit.

| | |
|---|---|
| ~~Cash on hand on the Effective Date:~~ | ~~$1,601,019.44~~ |
| ~~Less~~ | |
| ~~Administrative Claims paid on Effective Date (Prof. Fees and Admin. Rent)~~ | ~~$402,332.71~~ |
| ~~Pre-Petition Cure Costs~~ | ~~$153,514.63~~ |
| ~~Statutory costs and charges, including U.S. Trustee Fees~~ | ~~$8,000~~ |
| ~~Other Payments Due (First Commonwealth 1st Lien on Mocha Assets to be paid at Closing on the sale of Crazy Mocha Business)~~ | ~~$1,000,000~~ |
| ~~Balance after paying these amounts~~ | ~~$37,172.10~~ |

**EXHIBIT 4 TO AMENDED PLAN**

**DEMAND PROMISSORY NOTE**

**$75,000** _____ **July __, 2021**

FOR VALUE RECEIVED, **Ed's Beans, Inc.** a Pennsylvania corporation ("Maker"), hereby promises to pay to the order of **Marie W. Garesche**, an individual ("Payee"), in immediately available funds, the principal amount of (i) Seventy Five Thousand Dollars ($75,000), the receipt of which is hereby acknowledged plus (ii) the aggregate principal amount of all subsequent advances hereafter made or to be made by Payee, together with interest thereon on the unpaid principal amount hereof at a fixed rate of four (4%) percent per annum, compounded monthly (the "Interest Rate"), until this Demand Promissory Note (this "Note") is paid in full together with all interest accrued thereon, as hereinafter provided.

Interest shall be calculated by Payee based on the outstanding principal based on a 360-day year but shall be charged for the actual number of days elapsed.  Payee shall maintain a record of principal, interest and other obligations hereunder in connection with principal, interest and any other obligations and Indebtedness (as hereinafter defined), which record shall be deemed correct absent manifest error.

Maker shall pay the principal and interest of the obligation evidenced hereby and all other amounts due hereunder **ON DEMAND** no sooner than thirty (30) days following the third anniversary of the date of this Note.  Principal and interest shall be payable in lawful money of the United States of America at the address of Payee designated above or at such other place as the holder of this Note may designate.

All amounts now or hereafter payable hereunder and under any renewals, extensions and modifications hereof, together with all or existing and future obligations of any kind of Maker to Payee are hereinafter referred to collectively as the "Indebtedness".

The occurrence of any of the following events will be deemed to be an event of default ("Event of Default") under this Note:  (i) the nonpayment of any principal or interest under this Note or any other obligations or Indebtedness when due; (ii) any event of default or any other default, or Maker's failure to observe or perform any covenant under or contained in this Note, or any other document now or in the future evidencing or securing the Indebtedness and/or any other debt, liability or obligation of Maker to Payee; (iii) if any certification, warranty or representation made or hereafter made by Maker to Payee should prove to be false, erroneous or misleading in any material respect; (iv) the filing by or against Maker of any proceeding in bankruptcy, receivership, insolvency, reorganization, liquidation, conservatorship or similar proceeding; (v) any assignment by Maker for the benefit of creditors or any levy, garnishment, attachment or similar proceeding is instituted against any property of Maker, (vi) a default with respect to any other indebtedness of Maker for borrowed money, if the effect of such default is to cause or permit the acceleration of such debt; (vii) any change in Maker's business, assets, operations, financial condition or results of operations that has or could reasonably be expected to have any material adverse effect on Maker; or (viii) Maker dissolves or ceases doing business as a going concern.

In an event of default hereunder, the Indebtedness and all other sums due or owed by Maker hereunder or under the terms of the Security Documents shall, at the sole option of Payee and without notice to Maker, become due and payable immediately with interest (after such acceleration and until the Indebtedness is paid in full, including the period following entry of any judgment) at a rate which is three percent (3%) per annum in excess of the Interest Rate hereinabove specified (the "Default Interest Rate"), and payment of the same may be enforced and recovered by the entry of judgment on this Note and the issuance of execution thereon.

The remedies of Payee provided herein or otherwise available to Payee at law or in equity and the warrants of attorney herein or therein contained shall be cumulative and concurrent, and may be pursued singly, successively, and together at the sole discretion of Payee, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same.

Maker (and all endorsers, sureties and guarantors, if applicable) waives the right to presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note; liability hereunder shall be unconditional and shall not be affected in any manner by and indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee.

All rights of Payee hereunder shall inure to the benefit of her heirs, administrators, executors, personal representative, pledgees and assigns. When used herein, the singular may also refer to the plural, and the plural may also refer to the singular. "Payee", whenever used in this Note, shall mean any individual or organization to whom this Note is endorsed or transferred, and the use of any gender shall be applicable to the other gender or the neuter. This Note shall be governed by and construed in accordance with Pennsylvania law.

In addition to all other rights possessed by it, Payee shall have the right to pledge or transfer this Note and any renewals, extensions or modifications hereof, assigning therewith Payee's rights in any collateral or any portion thereof, and Payee shall be thereafter relieved from all liability accruing after the effective date of such assignment with respect to any of the collateral so assigned.

IN WITNESS WHEREOF, Maker, by and through its authorized representative, has duly executed and delivered this Note on the day and year first above written.

**Ed's Beans, Inc.**

_____

By: Edward Wethli

Its: President

Formatted: Justified, Widow/Orphan control